# Indianapolis, Bloomington and Western Railway Co.

## *v.*

## John I. Toy, Admr.

1. Master and servant—*liability of master to servant for injury from defective machinery.* Employers are only required to provide machinery of good material, and to have it constructed in a good and workmanlike manner. They, whether as individuals or corporations, are not insurers of their employees against injury from its use.

2. Where an engineer of a railway company was killed by the explosion of a boiler of a locomotive, and it appeared the boiler was made of the best material, and by first-class manufacturers, and had not been used long enough to create any suspicion of its unsafe condition, and the defect was not of such character as could have been discovered by any of the tests usually employed for the purpose, and there was no sign or indication of its unsafety, it was *held,* that the company was not liable for the injury.

Appeal from the Circuit Court of Champaign county; the Hon. C. B. Smith, Judge, presiding.

Messrs. Fairbank & Gere, for the appellant.

Mr. Justice Walker delivered the opinion of the Court:

It appears that about the 17th day of January, 1875, one Wm. F. Hiller, a fireman of an engine used on the Indianapolis, Bloomington and Western railroad, was killed by an explosion of the boiler of the engine. Appellee, as administrator of Hiller's estate, brought an action against the company, averring negligence on its part in not providing suitable, safe and properly constructed machinery, whereby Hiller was killed, and sought to recover damages therefor. A trial was had, resulting in a verdict against the company for $1950, upon which, after overruling a motion for a new trial, the court rendered judgment, and the company appeals.

It is claimed that the recovery is wrong, because it is not supported by the evidence, and, in the next place, because the railroad was, at the time the explosion occurred, in the hands, under the control, and being operated by, a receiver, and that

proper evidence offered by appellant was rejected, and the court erred in giving and refusing instructions.

We are clearly of opinion that the evidence fails to show a cause of action. It appears, from the evidence, that the engine which caused the injury was at the time employed in the yard for switching purposes; that a portion of the left-hand side sheet of the boiler gave way, which caused Hiller's death. Witnesses of intelligence, and who are unimpeached, testified that the engine was of first-class manufacture, built by a manufactory having reputation for constructing good and reliable machinery. The fire-box was constructed of copper, the best and most expensive material used for the purpose. The average time such a box lasts, in use, is seven or eight years, and is not regarded as being dangerous under five years. This had been in use only about three and a half years. The stay-bolts had leaked some, but that was not regarded as indicating the slightest danger. They and side sheets frequently leak, but that does not indicate weakness or want of safety. All leakage in the fire-bolts had been reported, and properly repaired. Experts testified they could not see how it was possible, with the prudence and care ordinarily used in the management of railroads, to discover the danger in this engine, as was shown by the explosion; that the employees in charge of the locomotive were careful and prudent men.

On the part of appellee, witnesses testified that they did not consider the engine safe; but their opinions seem to be based principally on examinations made after the boiler bursted. Webb, an engineer, testified, that he examined the boiler after the explosion, and it did not look very safe. He says, the thickness of the sheet could not be determined, by examination, without cutting through, but if the heads of the bolts were worn, that could be seen. Harvey, an engineer who used this locomotive half the time, says the heads of the bolts had leaked; that he reported, and they were repaired; that he did not regard it very safe, and did not use much steam. He was on the engine at 7 o'clock in the morning of the day

of the accident, but did not, on leaving it, report to the other engineer who took charge that he regarded it unsafe. Brash, a relative of the deceased, and the engineer in charge at the time, testified that he could not say he, at the time, regarded the engine as unsafe. Brash used it, he says, without protest, and was unable to say he was afraid of anything happening. He had reported leakage, and repairs were promptly made.

From this evidence we are wholly unable to see how appellant can be held liable, unless it was an insurer of the safety of its employees. If only the evidence of appellee was considered, it wholly fails to make a case. There is nothing in it showing the slightest neglect of duty on the part of appellant. Ordinary means of detecting the unsafety of the engine were entirely inadequate for the purpose, nor does the evidence of any witness show that there was any sign of unsafety. The result showed it was unsafe, and after the boiler had opened all could then see its defects, but none could before. The engineer in charge points out nothing to indicate its unsafe condition before the explosion, nor does his predecessor. Their opinions, manifestly, are based on an examination made after the accident, or they would have specified the defects upon which to conclude it was unsafe. We have searched the evidence in vain to find any fault on the part of the company, but none is found. No one of the witnesses has suggested any fault or the omission of any duty on the part of the company.

Employers are only required to provide machinery of good material, and to have it constructed in a good and workmanlike manner. They, whether as individuals or corporations, are not insurers of their employees against injury from its use. In this case the locomotive was made of the best material, and by first-class manufacturers, and had not been used a sufficient length of time to create any suspicion of its unsafe condition, which could have been discovered by any of the tests usually employed for the purpose, and its appearance did not indicate its unsafe condition. To have detected it, the boiler would have been greatly injured, by cutting through its walls.

We are unable to see that those having charge of the road and its machinery omitted any duty, and the company can not be held liable for the loss.

This view of the case renders it unnecessary to discuss the other questions presented by appellant.

The evidence being wholly insufficient to support a recovery, the judgment of the court below is reversed.

*Judgment reversed.*