## RICHMOND AND DANVILLÈ RAILROAD COMPANY *v.* ELLIOTT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF GEORGIA.

No. 199.   Argued April 5, 6, 1893. — Decided May 1, 1893.

On the trial of an action by a coupler and switchman of a railroad company, whose wages were $1.50 per day, against another company, to recover for injuries received while in the discharge of his duties from the explosion of the boiler of a locomotive, he was asked, as a witness, what were his prospects of advancement in the service of the company, and answered that he thought by staying he would be promoted; that he had been several times, in the absence of the yard-master, called upon to discharge his duties; that there was a "system by which you go in there as coupler or train-hand, or in the yard, and if a man falls out you stand a chance of taking his place;" and that the average yard-conductor obtained a salary of from $60 to $75 a month. *Held,* that there was error in admitting this testimony.

If a railway company, in purchasing a locomotive from a manufacturer of recognized standing makes such reasonable examination of it as is possible without tearing the machinery in pieces, and subjects it fully to all the ordinary tests which are applied for determining the efficiency and strength of completed engines, and such examination and tests disclose no defect, it cannot, in an action by a stranger, be adjudged guilty of negligence on account of a latent defect which subsequently caused injury to such party.

ON February 8, 1887, defendant in error commenced this action in the Superior Court of Fulton County, Georgia, to recover damages for personal injuries. The case was removed to the Circuit Court of the United States for the Northern District of Georgia, in which court a trial was had on the 2d of November, 1888, and a verdict returned in favor of the plaintiff for $10,000. Judgment having been entered thereon, defendant sued out a writ of error from this court.

The facts were these: The plaintiff was an employé of the Central Railroad and Banking Company, which company had, under an arrangement with the defendant, the right to use its

yard in Atlanta, Georgia, for switching purposes and in the making up of trains. He was one of the crew of a switch engine belonging to the Central Company, and on the night of November 25, 1886, while in the discharge of his duties in the yard, engine No. 515, belonging to the defendant, exploded its boiler, and a piece of the dome thereof struck him on the leg and injured him so that amputation became necessary. The explosion of this boiler was charged to be owing to negligence on the part of the defendant, in this respect, "that more steam was allowed to generate than the engine had capacity to contain;" that the boiler was defective, and that the defendant had notice of the defect.

*Mr. Henry Jackson* for plaintiff in error. *Mr. T. J. Leftwich* was with him on the brief.

*Mr. C. T. Ladson* for defendant in error.

MR. JUSTICE BREWER delivered the opinion of the court.

The first question to which our attention is directed arises on the admission of testimony in respect to the probability of plaintiff's promotion in the service of his employer, and a consequent increase of wages. It appears that he was working in the capacity of coupler and switchman for the Central Company, and had been so working for between four and five years; that he was 27 years of age, in good health, and receiving $1.50 per day. He was asked this question: "What were your prospects of advancement, if any, in your employment on the railroad and of obtaining higher wages?" In response to that, and subsequent questions, he stated that he thought that by staying with the company he would be promoted; that in the absence of the yard-master he had sometimes discharged his duties, and also in like manner temporarily filled the place of other employés of the company of a higher grade of service than his own; that there was a "system by which you go in there as coupler or train-hand or in the yard, and if a man falls out you stand a chance of

taking his place;" and that the average yard-conductor obtained a salary of from sixty to seventy-five dollars a month.

We think there was error in the admission of this testimony. It did not appear that there was any rule on the part of the Central Company for an increase of salary after a certain length of time, or that promotion should follow whenever a vacancy occurred in a higher grade of service. The most that was claimed was that when a vacancy took place a subordinate who had been faithful in his employment, and had served a long while, had a chance of receiving preferment. But that is altogether too problematical and uncertain to be presented to a jury in connection with proof of the wages paid to those in such superior employment. Promotion was purely a matter of speculation, depending not simply upon the occurrence of a vacancy, but upon the judgment or even whim of those in control. Of course, there are possibilities and probabilities before every person, particularly a young man, and a jury in estimating the damages sustained will doubtless always give weight to those general probabilities, as well as to those springing from any peculiar capacities or faculties. But that is a different matter from proving to the jury the wages which some superior officer receives, and then exaggerating in the minds of the jury the amount of the damage which has been sustained, by evidence tending to show that there is a chance of plaintiff being promoted at some time to such higher office. It is enough to prove what the plaintiff has been in fact deprived of; to show his physical health and strength before the injury, his condition since, the business he was doing, *Wade* v. *Leroy*, 20 How. 34; *Nebraska City* v. *Campbell*, 2 Black, 590; *Vicksburg & Meridian Railroad* v. *Putnam*, 118 U. S. 545, 554; the wages he was receiving, and perhaps the increase which he would receive by any fixed rule of promotion. Beyond that, it is not right to go and introduce testimony which simply opens the door to a speculation of possibilities. Nor was the error in the admission of this testimony cured by the instructions. On the contrary, they seem to emphasize that this chance of promotion was a matter to be

considered. This is what the court said : " I permitted some evidence to be introduced on the subject of the line of promotion in the business in which he was engaged. The plaintiff says, and the jury could consider the fact, that he had a probability of promotion in the line of services in which he was engaged; that the salary of the next grade of services in which he was engaged is from sixty to seventy-five dollars per month; the jury can consider that in finding what his financial or pecuniary loss is. I have permitted the evidence to go to the jury, and I will state to you that the jury ought not to be governed by a mere conjecture or possibility in a matter of that sort; it ought to be shown to the reasonable satisfaction of the jury that the man after a while would earn more money than he was then earning; it ought to be shown to your reasonable satisfaction; it is a matter for you to determine. The evidence has gone to you, and if you believe, if it has been shown to your reasonable satisfaction, that this man would earn more money at some future period, you would be authorized to consider that fact." Obviously, this directs their attention to this matter, and invites them to consider it in determining the damages which the plaintiff has sustained. While it does say that the jury should not be governed by any mere conjecture or possibility, yet it speaks of the matter as though there was placed before them a probability of promotion which they ought to consider. That probability was only such as was disclosed by the testimony we have referred to. Such an uncertainty cannot be made the basis of a legal claim for damages. The Code of Georgia of 1882, in section 3072, declares: " If the damages are only the imaginary or possible result of the tortious act, or other and contingent circumstances preponderate largely in causing the injurious effect, such damages are too remote to be the basis of recovery against the wrongdoer." Such declaration is only an affirmation of the general law in respect thereto.

A case very much in point was before the Supreme Court of Georgia. *Richmond & Danville Railroad* v. *Allison,* 86 Georgia, 145, 152. In that case the plaintiff (the action being one for personal injuries) was a postal clerk in the railway

mail service of the United States, and on the trial the assistant superintendent of the railway mail service, under whom the plaintiff was employed, was permitted to give testimony as to the chances of promotion. This was adjudged error. The court thus discussed the matter: "We think this evidence shows that Allison's promotion was too uncertain, and the possibility of an increase of his salary from $1150 to $1300 too remote to go to the jury, and for them to base a verdict thereon. While it is proper in cases of this kind to prove the age, habits, health, occupation, expectation of life, ability to labor, and probable increase or diminution of that ability with lapse of time, the rate of wages, etc., and then leave it to the jury to assess the damages, we think it improper to allow proof of a particular possibility, or even probability, of an increase of wages by appointment to a higher public office, especially where, as in this case, the appointment is somewhat controlled by political reasons. The deputy clerk of this court, for example, is very efficient and faithful, and if there should be a vacancy in the office of clerk of the court, it is not only possible, but very probable, that he would be appointed to fill the vacancy, thereby obtaining a much larger salary than he now receives; but if he should be injured as Allison was, and were to sue the railroad company for damages, we do not think it would be competent for him to prove the possibility or probability of his appointment to fill a vacancy in the office of clerk, especially as the *personnel* of the court, upon which such appointment must depend, might change in the meantime. To allow the jury to assess damages in behalf of the plaintiff on the basis of a large income arising from a public office which he has never received, which is merely in expectancy and might never be received, or, if received at all, might come to him at some remote and uncertain period, would be wrong and unjust to the defendant. We believe the rule of most of the railroads in this State is to promote their employés. An employé commences at the lowest grade, and if he is competent, capable, and efficient he is very likely to be promoted upon the happening of a vacancy above him. If one occupying a lower grade of service were injured,

would he be allowed to prove, unless he had a contract to that effect, that his prospects of promotion to a higher grade and better salary were good, and would the jury be allowed to base their calculation and estimate of the damages upon a much larger salary which he never received, but merely had a prospect of receiving? It will be observed that the testimony in this case shows that there were two others in the same class with Allison, equally competent and efficient as he was, and it is by no means certain that Allison would have been preferred to each of them in case of vacancy, and promoted above them; so it could not be said that he was in direct line of promotion." And this decision is in harmony with the general course of rulings. *Brown* v. *Cummings,* 7 Allen, 507; *Brown* v. *Chicago, Rock Island &c. Railway,* 64 Iowa, 652; *Chase* v. *Burlington, Cedar Rapids &c. Railroad,* 76 Iowa, 675. For this error, which it may well be believed worked substantial injury to the rights of the defendant, the judgment will have to be reversed.

Another matter is this: The injury was caused by the explosion of the boiler of an engine, and it is insisted that the testimony shows that the engine was handled properly and carefully; that the defect in the iron casting of the dome-ring, which, after the explosion. was found to have existed, was a defect which could not with the exercise of reasonable care have been discovered by the company; and that it took all reasonable and proper care to test the boiler and engine, and from such test no defect was discovered. Hence the contention is, that the court should have instructed the jury to find a verdict for the defendant. Perhaps, in view of what may be developed on a new trial, it is not well to comment on the testimony in respect to these matters. Whether there was negligence in respect to the accumulation of steam is a question of fact, involving, first, the capacity of the boiler, the amount of steam which had accumulated, and the precautions which were taken to prevent its going above a certain pressure. With regard to the defect in the iron casting, which seems to have been revealed by the explosion, it may be said that it is not necessarily the duty of a purchaser of

machinery, whether simple or complicated, to tear it to pieces to see if there be not some latent defect. If he purchases from a manufacturer of recognized standing, he is justified in assuming that in the manufacture proper care was taken, and that proper tests were made of the different parts of the machinery, and that as delivered to him it is in a fair and reasonable condition for use. We do not mean to say that it is never the duty of a purchaser to make tests or examinations of his own, or that he can always and wholly rely upon the assumption that the manufacturer has fully and sufficiently tested. It may be, and doubtless often is, his duty when placing the machine in actual use to subject it to ordinary tests for determining its strength and efficiency. Applying these rules, if the railroad company after purchasing this engine made such reasonable examination as was possible without tearing the machinery to pieces, and subjected it fully to all the ordinary tests which are applied for determining the efficiency and strength of completed engines, and such examination and tests had disclosed no defect, it cannot in an action by one who is a stranger to the company be adjudged guilty of negligence because there was a latent defect, one which subsequently caused the destruction of the engine and injury to such party. We do not think it necessary or proper to go into a full discussion of the facts, but content ourselves with stating simply the general rules of law applicable thereto.

For the error first above noticed, the judgment will be

*Reversed and the case remanded with instructions to grant a new trial.*