## Service *v.* Shoneman.

| 196 | 63 |
|-----|-----|
| d207 | ²500 |
| 196 | 63 |
| 216 | ¹620 |

*Negligence—Master and servant—Measure of employers' liability.*

Employers are not insurers of the lives or safety of their employees. They are liable for the consequences, not of danger but of negligence ; and the unbending test of negligence in methods, machinery and appliances, is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man.

In an action against an employer to recover damages for the death of an employee caused, not by a boiler explosion, but by a sudden and unusual escape of steam in great force and large volume from the end of a boiler, there can be no recovery against the defendant where the evidence shows that he bought the boiler after making extensive inquiries amongst business men, that he paid a higher price for it than many others were offered for, that it was recommended to him as nonexplosive, that it was in general use, that it was operated by a competent engineer, that it was used three years before the accident, and that three days before the accident it was examined by the official inspector who certified that it would stand a working pressure of double the force of that which was on it when the accident occurred.

Argued March 21, 1900. Appeal, No. 13, Jan. T., 1900, by defendant, from judgment of C. P. No. 2, Phila. Co., Dec. T., 1893, No. 87, on verdict for plaintiff, in case of Mary Service *v.* Louis Shoneman, trading as Shoneman Brothers. Before GREEN, C. J., McCOLLUM, DEAN, FELL, and MESTREZAT, JJ. Reversed.

Trespass for death of plaintiff's husband. Before WILT-BANK, J.

The facts are fully stated in the opinion of the Supreme Court.

The court refused to give binding instructions for defendant.

Verdict and judgment for plaintiff for $5,000. Defendant appealed.

*Error assigned* was in refusing to give binding instructions for defendant.

*Richard P. White,* with him *Joseph H. Taulane,* for appellant.—As the defendant was not an insurer of the safety of the boiler, the question is not whether the boiler was safe, but whether he exercised ordinary care and diligence: Peoria, Decatur, etc., Ry. Co. v. Hardwick, 48 Ill. App. 562; Doyle v. White, 35 N. Y. Supp. 760; Probst v. Delamater, 100 N. Y. 266; Reese v. Hershey, 163 Pa. 253.

If the boiler was in ordinary use, that is conclusive of its safety: Kehler v. Schwenk, 144 Pa. 348; Keenan v. Waters, 181 Pa. 247; Fick v. Jackson, 3 Pa. Superior Ct. 378; Titus v. Bradford, etc., R. R. Co., 136 Pa. 618.

An employer is not bound to furnish for his workman the safest machinery, nor to provide the best methods for its operation in order to save himself from liability for accident resulting from its use: Payne v. Reese, 100 Pa. 301; Iron Ship Building Works v. Nuttall, 119 Pa. 149; Northern Central Ry. Co. v. Husson, 101 Pa. 1; Allison Mfg. Co. v. McCormick, 118 Pa. 519; Lehigh, etc., Coal Co. v. Hayes, 128 Pa. 294; Pittsburg, etc., R. R. Co. v. Sentmeyer, 92 Pa. 276; Faber v. Carlisle Mfg. Co., 126 Pa. 387; Keenan v. Waters, 181 Pa. 247; Dooner v. Del. & Hudson Canal Co., 171 Pa. 581; Harley v. Buffalo Car Co., 142 N. Y. 31; Richards v. Rough, 53 Mich. 212; Georgia Pac. Ry. Co. v. Probst, 83 Ala. 518; Reese v. Hershey, 163 Pa. 253.

A master who purchases a machine or appliance from a reputable manufacturer has fulfilled his full duty to furnish safe and proper machinery to his employees: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Mansfield Coal, etc., Co. v. McEnery, 91 Pa. 185; Carlson v. Phœnix Bridge Co., 132 N. Y. 273; Shea v. Wellington, 40 N. E. Repr. (Mass.) 173; Mansfield Coal Co. v. McEnery, 91 Pa. 185; Oglesby v. Missouri, Pac. Ry. Co., 51 S. W. Repr. 758; Racine v. N. Y. Cent., etc., R. R. Co., 70 Hun. (N. Y.), 453; McGregor v. Reid, 76 Ill. App. 610; Patton v. Texas, etc., R. R. Co., 95 Fed. Repr. 244; Bucher v. Pryibil, 45 N. Y. Supp. 972; Alaska Mining Co. v. Whelan, 168 U. S. 86.

*Thad. L. Vanderslice* and *Maxwell Stevenson,* with them *Charles Goldsmith,* for appellee.—The duty is on the employer to furnish his employees reasonably safe appliances with which

to do the work assigned to them: Bannon v. Lutz, 158 Pa. 166.

All the testimony, both for the plaintiff and the defendant, was upon questions of fact, and where there is conflicting testimony as to the reasonable safeness of the appliances, etc., the question is for the jury: P. W. & B. R. R. Co. v. Keenan, 103 Pa. 124.

Where there is any evidence of negligence on the part of the defendant it must be submitted to the jury: Murphy v. Crossan, 98 Pa. 495; P. W. & B. R. R. Co. v. Keenan, 103 Pa. 124; Spear v. P. W. & B. R. R. Co., 119 Pa. 61: Kohler v. Penna. R. Co. 135 Pa. 357; Glossen v. Gehman, 147 Pa. 619; Cougle v. McKee, 151 Pa. 602; Walbert v. Trexler, 156 Pa. 112; Bannon v. Lutz, 158 Pa. 166; Folk v. Schaeffer, 186 Pa. 255.

The inspection of the officials unless adequate and proper rose no higher than any other inspection by servants of the employer, and at any rate, it was properly submitted to the jury upon the question of whether the employer had exercised due care: Flike v. Boston, etc., R. R. Co., 53 N. Y. 549; Booth v. Boston & Albany R. R. Co., 73 N. Y. 38; Mehan v. Syracuse, etc., R. R. Corporation, 73 N. Y. 585; Fuller v. Jewett, 80 N. Y. 46; Lewis v. Seifert, 116 Pa. 628; Smith v. Hillside Coal & Iron Co., 186 Pa. 28; N. Y., etc., R. R. Co. v. Bell, 112 Pa. 400.

OPINION BY MR. JUSTICE DEAN, May 14, 1900:

The defendant is a merchant in the city of Philadelphia, using steam power in conducting his business. On August 31, 1890, plaintiff's husband, Thomas Service, was killed, not exactly by a boiler explosion, but by the sudden and unusual escape of steam in great force and large volume from the end of the boiler. At the time of the accident the boiler and engine were in charge of one Rubner, a competent engineer. Service, the deceased, was a sort of porter or "all around man" in the establishment; at the exact time of his death, he was helping the engineer in the boiler room. From the testimony of the engineer, who is the only living witness as to how the accident occurred, the boiler and all its attachments were in proper order in the morning when the fire was kindled; about

eleven o'clock in the forenoon, he heard a hissing noise, as if of escaping steam, in the end of the boiler, where was a three-cornered plate covering three of the boiler tubes and secured by bolt and nut. He discovered a small jet of steam, about the diameter of a lead pencil, escaping from one side of the plate, which to him indicated the plate was loose; at his request Service handed him a wrench wherewith, by screwing down the nut on the bolt, the plate would be made tight; as he turned the wrench, the three-cornered plate, instead of tightening, turned around with the wrench, greatly enlarging the aperture, whereby the steam escaped with great force in large quantity, severely though not fatally scalding the engineer, but Service so badly, that he died in twenty minutes. The plaintiff, alleging that defendant had furnished a dangerously constructed boiler, and one not in ordinary use, brought this suit for damages. The learned judge of the court below, in a charge admirable for its lucidness, as well as exhaustiveness, in that it presented impartially every question which could be raised on the evidence, submitted the case to the jury, to find whether the construction of the boiler, as to this plate and the method of attachment, was such as was in ordinary use, and had been inspected while in use with ordinary care, saying to them, if they found against defendants in these particulars, they might find a verdict for plaintiff. There was a verdict for plaintiff in the sum of $5,000, and from the judgment entered on it, we have this appeal by defendant, with five assignments of error; no one of them is of sufficient merit to warrant discussion, except the fifth, which asks the court, under all the evidence, to direct a a verdict for defendant.

The case is a close one; we have most carefully considered the evidence in all its bearings and the law that applies to it, and have concluded that, to permit the judgment, under the undisputed or established facts, to stand, would fix a precedent, practically imposing on the employer the responsibility of an insurer of his employees against accident. However varying may be the rule in some other states, in this it is settled. Take the rule as stated by our Brother MITCHELL in Titus. v. Bradford, etc., Railroad Co., 136 Pa. 618. He says: "Absolute safety is unattainable, and employers are not insurers. They are liable for the consequences, not of danger, but

of negligence; and the unbending test of negligence in meth ods, machinery and appliances is the ordinary usage of the business. No man is held by law to a higher degree of skill than the fair average of his profession or trade, and the standard of due care is the conduct of the average prudent man." For this rule he cites not less than six of our own cases which preceded it; certainly not less than ten have followed, the latest being Keenan v. Waters, 181 Pa. 247. Of course, a steam boiler is dangerous, even if of the very best construction; all that can be hoped for is, that the danger shall be minimized by care in construction and use. Take the undisputed facts as to the care exercised by the owner in the selection of this boiler. When he bought it, three years before the accident, he inquired of a large number of business men who had knowledge on the subject as to the best boiler, and came to the conclusion to see Edward J. Moore, who was said to sell a nonexplosive boiler which he had invented; he sent for Moore, who came; he determined to take this one, after Moore had pointed out its excellencies and superiority; he paid a higher price for it than many others were offered for. Moore gave him the names of a large number of persons who had bought and were then using the boiler. He then employed Rubner, a competent engineer; this is conceded by plaintiff; he ran the boiler and engine for about three years, or up to the date of the accident, without complaint as to its safety; it was operated for nearly four years afterwards when it was sold, only because a larger one was needed. Moore, from whom the boiler had been purchased, had a large experience in the use of boilers, and then invented this pattern. He testifies that he recommended this boiler to Shoneman as the only nonexplosive boiler then in use; that it was used all over the United States, and to some extent in Europe; that at the date of the purchase there were twelve, and at the date of the accident eighty-three, of the same type in use in Philadelphia and vicinity; that the boiler was perfectly safe, and that he had never known of an accident by reason of their use. He gives the names and places of business of those using the boiler at the date of the purchase by Shoneman, and of many of those who used it afterwards. Other witnesses, engineers, were called, who had charge of the same kind of boilers, and testified that they believed it entirely safe.

Their opinion was that the accident arose from attempting to screw down the plate while the pressure from the steam was on; that Rubner should first have either drawn his fires or directed the escape of steam through the safety-valve before attempting to manipulate the screw. This, however, is immaterial, for the competency of the engineer is conceded by plaintiff; hence, if the accident came from his neglect, the defendant is not answerable to a coemployee for it, and so the court instructed the jury. The question is, whether Shoneman negligently furnished to Service and other employees dangerous machinery or appliances wherewith to carry on the operations of his business. And, as is said in Titus v. Railroad Co., supra, the unbending test of negligence is the ordinary usage of the business. The care exhibited by defendant in the selection of this boiler then in use, and which to him seemed safer than other boilers, the long use of it without complaint by the engineer, that it was extensively used and favored by many other owners and manufacturers, absolutely rebut the charge of negligence. Assume that there was some conflict in the evidence as to whether the plate over the tubes could have been made safer by some other device or arrangement, nevertheless, defendant was not bound to adopt the safest attachment; over and over, we have said, no such burden is imposed upon an employer. Assuredly, there were in use thousands of different patterns of other boilers which had no such attachment, but there was no evidence that this had ever been rejected because unsafe, or that it had not such extended use as defendant claimed and adduced evidence to establish. He was neither a boilermaker nor an engineer; he could only select one at the suggestion of those who used boilers, or on the recommendation of those who were experts; if, in the exercise of business prudence, he got an unsafe boiler, yet one which was in ordinary use, he is not answerable for the consequences.

Another point was made at the trial which calls for notice. It was alleged on the part of plaintiff that there was no proper inspection of the boiler; that age and use had impaired its strength, and that the consequent weakness may have aggravated the disaster if it did not cause it. We cannot see how other than one view can be taken of the evidence; either the accident was caused by the unsafe design of the plate over the

tubes, or by the negligence of the engineer in manipulating the nut with the wrench; but, assume that neither was the cause, and that it had its source in the weakness of an impaired boiler, then, was there sufficient evidence of neglectful inspection to render defendant answerable? The boiler was several times inspected by the official boiler inspector of the city, who declared it to be in safe condition; the last time just three days before the accident, when the inspector, after examination, delivered to defendant his official certificate of inspection, setting out that the boiler would stand a working pressure of ninety pounds to the square inch, just twice that which was on it when the accident occurred. This official must be presumed to have done his duty; nor is there anything in the evidence to rebut that presumption; but even if he failed, how can defendant be held responsible; he had not the knowledge which fitted him to inspect; what else, in the exercise of care, could he do, than rely upon the official certificate of a competent and sworn officer? We think, there was no evidence from which the jury could find absence of care on part of defendant in this particular. To hold otherwise would place employers in a situation of as great risk as that of accident insurance companies.

The judgment is reversed and judgment is entered for defendant.