WESTINGHOUSE ELECTRIC & MFG. CO. v. HEIMLICH.

(Circuit Court of Appeals, Sixth Circuit. January 14, 1904.)

No. 1,209.

1. MASTER AND SERVANT—INJURIES TO SERVANT—USE OF APPLIANCES—CARE REQUIRED.

A master is not a guarantor of the safety of appliances furnished for the use of his servants, and is not guilty of negligence in permitting the use of an appliance which the experience of the trade and manufacture has sanctioned as reasonably safe.

2. SAME—DERRICK CHAINS—BREAKAGE—CRYSTALLIZATION—INSPECTION.

Where defendant purchased a derrick chain from reputable chain-makers, who represented that it was of the highest quality of iron, hand-made, and tested, and it appeared that the chain was externally sound, and had been subjected to a careful visual inspection from time to time, during its three months' use, without disclosing any defects, before it broke because of crystallization of the iron, causing the death of plaintiff's intestate, defendant was not guilty of negligence in failing to test the chain by subjecting it to a strain for the purpose of discovering latent defects therein.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Horace Andrews, for plaintiff in error.

Samuel Heimlich, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge. The intestate of the defendant was a laborer in the foundry department of the shops of the plaintiff in error, and came to his death through the breaking of a crane chain while engaged in the operation of the crane. There was evidence tending to show that the chain which broke was, in size and apparent strength, such as is ordinarily used by foundrymen in connection with cranes gauged to 30 tons. There was also evidence tending to show that this chain was bought from reputable chainmakers, who represented the chain as of the highest quality of iron, handmade, and tested. The evidence tended to show that the chain was externally sound, and that it had been from time to time subjected to careful visual inspection without the discovery of any defect or other indication of weakness. There was evidence tending to show that the chain had been in use but three months, and that the cause of its breaking was crystallization, occurring probably in course of its manufac-

¶ 1. See Master and Servant, vol. 34, Cent. Dig. §§ 172, 181.

ture. There was no evidence that the chain, after purchase, had been subjected to any test as to its tensile strength, other than that incident to its use before the occasion of its breaking. Neither was there evidence that it was customary for the users of such chains to test them other than for defects discoverable by visual inspection. There was conflicting evidence as to the load at the time of breaking, and as to certain alleged jerking movements in lowering the crane, and as to the cause and effect of straining the chain by such irregular movement. There was a judgment for the defendant in error.

The jury were instructed, among other things, as follows:

"A test of the strength of the chain is the amount of weight which it will sustain, and that is accomplished by putting such a weight upon the chain. Now, whether that is done by some method such as merely suspending a weight to the chain for the sole purpose of the test, or whether it is done in the course of work, by which an equal weight was put upon the chain, there is a test of the chain in either case, because in either case the trial has been had as to whether the chain will support a given weight. It need not be a formal test in the sense that the chain is taken out for the express purpose of testing it, and putting it into some device calculated to put a strain upon it, and measure the strain, but any method, if the defendant company, previous to this action, had given themselves an opportunity to be informed as to whether this chain was defective or an ordinarily good chain, such as it appeared to be, by putting sufficient weight upon the chain, either in the way of lifting a sufficiently heavy cope to test it, or by lifting iron piled up to test it, if you should find from the evidence that it had pursued either course as a means of informing itself of the existence or nonexistence of defects in the chain, then your verdict should be for the defendant. If they omitted such appropriate, reasonable test, by putting weights of some kind on the chain, which would, if the chain was defective, disclose that defect by a breakage, or, if the chain were good, would disclose that fact, if they omitted that, then your verdict should be for the plaintiff."

To which the court added:

"And in that connection I will say that they are also to consider the idea of factors of safety; that, in ascertaining what is the safe limit of weight to put upon a chain, it must be tested by a higher weight than was expected to be put upon it. What difference of weight should be used in that test is what is called a factor of safety, and that is left to your judgment as jurors."

In an earlier part of the charge the jury had been distinctly told that the defendants could not rely upon the reputation and representations of the makers of the chain, and that a mere visual inspection of the chain would not take the place of some test calculated to develop weakness due to latent defects.

The master is not a guarantor of the safety of machinery or implements furnished his employés, and is only bound to use ordinary care, diligence and skill for the purpose of protecting them, and it is not negligence to use and employ such machinery or implements as the experience of trade and manufacture sanction as reasonably safe. Hough v. Railway Co., 100 U. S. 213, 25 L. Ed. 612; Washington Rd. Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044, 34 L. Ed. 235; Union Pacific Ry. Co. v. Daniels, 152 U. S. 684, 689, 14 Sup. Ct. 756, 38 L. Ed. 597; Texas, etc., Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; Shearman & Redfield on Negligence (5th Ed.) § 195.

The duty of examining for a defect thus discoverable grows out of the fact that the master is chargeable with knowledge of any defect in an appliance furnished his servant which was discoverable by the exercise of reasonable care. Thus the master was held negligent for failing to discover a crack in a car wheel, which, though filled with dirt and grease, was discoverable by careful examination. Union Pacific Ry. Co. v. Daniels, cited above.

The defect in this chain was one which could not have been discovered by anything short of a test which would develop its existence by putting upon it a greater strain than the chain so defective would stand. In other words, in order to determine whether the iron was in fact crystallized, it was necessary to break or cut into each link, for it was altogether possible that if one link was made from crystallized iron that others were also defective. This defect might not exist to the same extent in every link. Was it, then, the duty of the plaintiff in error to subject this chain to a test for latent defects before allowing it to be used, or might the purchasers rely upon the reputation of the maker, and his representation as to the quality of the material used, and as to the results of the manufacturer's tests? In the selection of machinery, tools, or material the master is responsible to his servants for only ordinary care; that degree of care which a man of ordinary prudence in the same line of business would be expected to exercise to secure his own safety were he doing the work. Shearman & Redfield on Negligence (5th Ed.) § 195; 20 Am. & Eng. Ency. Law, 78, 79; De Graff v. N. Y. Cent. Rd., 76 N. Y. 125; Marsh v. Chickering, 101 N. Y. 390, 5 N. E. 56; Carlson v. P. B. Co., 132 N. Y. 273, 30 N. E. 750; Railway Co. v. Aiken, 89 Tenn. 245, 14 S. W. 1082; Smith v. N. Y., &c., R. Co., 164 N. Y. 491, 58 N. E. 655; Service v. Shoneman, 196 Pa. 63, 46 Atl. 292.

Ordinary care does not require such tests as are appropriate only to the process of manufacture. Nor does it demand that the article shall be taken to pieces or subjected to any other test which is not shown to be practically efficient and in ordinary use by careful users. Thus, in Richmond and Danville Rd. v. Elliot, 149 U. S. 266, 271, 13 Sup. Ct. 837, 37 L. Ed. 728, the question involved the liability of the railroad company to a licensee, not a servant, who was injured by explosion of a locomotive. The rule in respect to such a plaintiff and a servant is substantially the same. The court among others things said "that it is not necessarily the duty of a purchaser of machinery, whether simple or complicated, to tear it to pieces to see if there be some latent defect. If he purchase from a manufacturer of recognized standing, he is justified in assuming that in the manufacture proper care was taken, and that proper tests were made of the different parts of the machinery, and that as delivered to him it is in fair and reasonable condition for use. We do not mean to say that it is never the duty of a purchaser to make tests or examinations of his own, or that he can always and wholly rely upon the assumption that the manufacturer has fully and sufficiently tested. It may be, and doubtless often is, his duty, when placing the machine in actual use, to subject it to ordinary tests for determining its strength and efficiency." So it was held that it was not required to cut through the

wall of a locomotive to discover a defect only so discoverable. Bloomington Ry. Co. v. Toy, 91 Ill. 474, 33 Am. Rep. 57.

In the case of the Olympia, decided by this court, and reported in 9 C. C. A. 353, and 61 Fed. 120, there was a latent defect in a tiller rope. We said:

"Whether this defect was due to the fault of the manufacturer, or was the result of use, the defendants would not be in fault, unless it was of such a character as that, by such examination as ,was in their power to make, it could have been disclosed. The rope was, when bought, such as a prudent and cautious owner might safely put in his vessel. No test, save that of the hand and eye, was possible. It was bought, as the best of its kind, from reputable outfitters. The manufacturer is undisclosed. We do not think this important. The article was such as was adapted to the purpose for which it was used, and was such as was customarily used by prudent men engaged in the same business. The owners of vessels are not, as to strangers, under any liability as warrantors of the sufficiency and soundness of machinery or equipment. They are bound to use that degree of care in the selection of machinery and equipments which persons of ordinary prudence are accustomed to use and employ for the same purpose."

In L. & N. Rd. Co. v. Allen, 78 Ala. 494, it was held that to require the application of the hydraulic water test to a locomotive would be more than demanded by the law of ordinary care. It not appearing that on well-regulated railroads it was usual or practical to remove brake rods for the purpose of inspecting them, not having been long in use or in any way under suspicion, it was held not to be negligence to omit such test. L. & N. Rd. v. Campbell, 97 Ala. 147, 12 South. 574.

The burden is upon the plaintiff to prove the negligence of the defendant. If the chain broke by reason of some defect, it devolves upon him to show that by reasonable care this defect might have been discovered. Texas & Pacific Ry. Co. v. Barrett, 166 U. S. 617, 17 Sup. Ct. 707, 41 L. Ed. 1136; L. & N. Rd. Co. v. Campbell, 97 Ala. 147, 151, 12 South. 574.

The evidence showed that purchasers or users of such chains ordinarily relied upon the reputation of the maker and upon his representation as to the quality of the iron and strength of the chain. Neither was there any evidence tending to excite suspicion as to the soundness or strength of this chain, such as having been a long time in use. The chain had been many times examined for external evidences of defects, injury, or wear. In such circumstances there was no reason to apprehend a latent defect, and the purchaser is not required to make so extraordinary a test as that indicated by the court.

A purchaser of such an article from a reputable manufacturer, with representations as to its tested strength and quality of material, is not responsible for hidden defects, which cannot be discovered by a careful external examination. Ladd v. New Bedford Rd., 119 Mass. 412, 20 Am. Rep. 331; Spicer v. South Boston Iron Co., 138 Mass. 426; Roughon v. Boston Block Co., 161 Mass. 24, 36 N. E. 461.

The defendant in error has cited certain cases in which the employer was held liable for injuries resulting from the breaking of chains. Among them are the cases of Morton v. Rd. Co., 81 Mich. 423, 46 N. W. 111; Hopwood v. Benjamin & Co. (N. J. Err. & App.) 54 Atl. 435; Finnerty v. Burnham (Pa.) 54 Atl. 996; The Rheola (C.

C.) 19 Fed. 926. These cases do not present the question here raised. The defects were discoverable by inspection, and the failure to make such inspection was plainly negligence. The cases cited must be read and understood in the light of the facts. Thus read, the question of liability for failure to make tests for latent defects was not presented. No case cited carries the requirement of an extraordinary test so far as the court below.

Judgment reversed, and remanded for new trial.