## BUSH v. CINCINNATI TRACTION CO.

(Circuit Court of Appeals, Sixth Circuit. January 3, 1912.)

No. 2,148.

1. MASTER AND SERVANT (§§ 101, 102*)—INJURIES TO SERVANT—DUTY OF EM-
PLOYER—SAFETY OF APPLIANCES.

An employer is not a guarantor of the safety of appliances furnished
for the use of employés or with which they, in the course of their em-
ployment, naturally come in contact, but is bound only to furnish rea-
sonably safe appliances, and to protect the employés from such dan-
gers in the performance of their work as in the exercise of ordinary care
and prudence can be protected against.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 172;
Dec. Dig. §§ 101, 102.*]

2. MASTER AND SERVANT (§ 125*)—INJURIES TO SERVANT—KNOWLEDGE OF DE-
FECTS.

A servant cannot recover against the master for injuries caused by
a defect unknown to the master and which could not have been known
by the exercise of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
243–251; Dec. Dig. § 125.*]

3. MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—USE OF APPLIANCES
—INSPECTION.

An employer is not negligent in permitting the use of an appliance
which the experience of the manufacturer and the industry in which it
is used has sanctioned as reasonably safe, but the employer discharges
his whole duty if he obtains the appliance from a reputable manufac-
turer and uses ordinary care in inspecting it, before using, he not be-
ing guilty of negligence in failing to discover latent defects which or-
dinary care would not have disclosed, being authorized to assume, in
the absence of anything to the contrary, discoverable by ordinary test,
that the article was properly made.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
235–242; Dec. Dig. § 124.*]

4. MASTER AND SERVANT (§ 124*)—INJURIES TO SERVANT—APPLIANCES—IN-
SPECTION.

The rule that a master is not liable for injuries caused by latent de-
fects in appliances furnished does not absolve him from the duty of
making a reasonable inspection or from the result of defects discover-
able by a reasonable and ordinary visual inspection.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
235–242; Dec. Dig. § 124.*]

5. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DEFECTIVE APPLI-
ANCES—INSPECTION—QUESTION FOR JURY.

Where a lineman was injured by a cross-wire lug pulling out from
the wall of a building from the weight of the cross-wire against which
plaintiff was leaning his weight, evidence held to require submission to
the jury of the question whether defendant was negligent in failing to
make an inspection of the lug to discover the method and security with
which it was fastened to the wall.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§
1010–1050; Dec. Dig. § 286.*]

6. MASTER AND SERVANT (§ 265*)—INJURIES TO SERVANT—NEGLIGENCE—RES IPSA LOQUITUR.

Where an electric lineman was injured by the pulling out of a lug to which a cross-wire was attached to the wall of a building, the mere fact of the accident was insufficient to show the master's negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 881; Dec. Dig. § 265.*

Application of doctrine of res ipsa loquitur in action for injuries to servant, see note to Carnegie Steel Co. v. Byers, 82 C. C. A. 121.]

7. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—ASSUMED RISK —CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY.

A span wire having been placed in position to support defendant's trolley wire was attached at either end to bolts inserted in the brick, walls of buildings on opposite sides of the street. The span wire had been tightened by block and tackle, and the old cross-wire had been cut away leaving an end a few inches long attached to the eye of the bolt on one side of the street to which the new wire was joined. The bolt projected into the street about four inches from the face of the building, but did not pass through the wall, having entered a socket or lug leaving an expanding end about 1½ inches square into which the bolt screwed. Plaintiff, to cut off the end of the old cross-wire, mounted a ladder and, while attempting to cut the wire, the entire wall connection, including the bolt, lug, and brick, pulled out of the wall carrying plaintiff to the ground and causing the injuries complained of. *Held*, that plaintiff did not assume the risk, and was not guilty of contributory negligence as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1051–1088; Dec. Dig. §§ 288, 289.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

In Error to the Circuit Court of the United States for the Western Division of the Southern District of Ohio.

Action by John Bush against the Cincinnati Traction Company. Judgment for defendant, and plaintiff brings error. Reversed and new trial ordered.

T. L. Michie (Closs & Luebbert, on the brief), for plaintiff in error.

R. B. Smith (Chas. A. Groom, on the brief), for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

KNAPPEN, Circuit Judge. Plaintiff in error brought suit on account of personal injuries incurred while employed by the defendant as a lineman. The accident causing the injuries happened in September, 1907, and in this way: The crew to which plaintiff belonged was engaged in putting in new cross or span wires supporting defendant's trolley and other wires belonging to its street railway system on Seventh street in Cincinnati. A new span wire had just been placed in position, being attached at either end to bolts inserted in the brick walls of buildings on opposite sides of the street, and the span wire had already been tightened by block and tackle applied thereto at the center of the street. The old cross-wire had been cut away, leaving a "tail end" a few inches long attached to the eye of the bolt on

the north side of the street to which the new wire was joined. This bolt was from 8 to 10 inches long and about one-half an inch in diameter. It projected into the street about four inches from the face of the building. It did not pass through the wall, but entered a socket or lug having an expanding end about 1½ inches square into which the bolt screwed. To cut off this tail end of the old cross-wire plaintiff mounted a ladder, the upper end of which leaned against the building, and while attempting to cut the wire with a pair of heavy nippers or "bull cutters," which he was obliged to hold for the purpose about 3 to 3½ feet above his head, the entire wall connection, including bolt, lug, and brick, pulled out of the wall, the weight of the cross-wire with its load carrying plaintiff to the ground and causing the injuries complained of.

The ground of defendant's negligence principally relied on is the maintaining of the alleged insufficient connection of the bolt with the wall, in that the bolt neither passed through the wall nor was securely fastened therein. There was testimony tending to show that the connection in question was unsafe construction; that it was bound to wear loose on account of the constant vibration of the wire; that the best construction required connection with a pole set in the street, and if a wall connection were made, that safe construction required that the bolt pass through the wall and be held upon the inside thereof by nut and washer, or that at least the bolt connection be secured in the wall by the use of solder. There was testimony tending to show (inferentially, but not expressly) that the connection in question was not soldered, being wedged in with nails and perhaps other material. There was no express testimony of notice to the defendant of the alleged defective condition of this connection. The defendant introduced no testimony. It was, however, stipulated that the connection in question "was part of the wire system of the street railroad operated by the defendant and in place in said wall when defendant acquired said system from the owner thereof, the Cincinnati Street Railway Company, on February 21, 1901." At the close of the plaintiff's case, defendant moved for a directed verdict in its favor, upon the grounds: First, that its negligence was not shown; second, that plaintiff had assumed the risk in question; and, third, that plaintiff's own negligence contributed to the injury. Verdict was directed upon the first ground, the other grounds not being passed upon.

The pivotal question is whether there was testimony reasonably tending to show that the defendant was negligent in maintaining the appliance in question, and in failing to discover and remedy its alleged defective condition.

[1, 2] The rule is well settled that an employer is not the guarantor of the safety of appliances furnished for the use of the employé, or with which the latter will in the course of his employment naturally come in contact; that the employer is bound only to furnish reasonably safe appliances, and to protect the employé from such dangers in the performance of his work as in the exercise of ordinary care and prudence can be provided against that the employé is presumed to assume the risks of such injuries from accident as are in-

cident to the nature and character of the employment, and against which the employer could not, in the exercise of ordinary care, have protected him; and that no recovery can be had against an employer where the defect causing the injury was unknown to the employer and could not have been known in the exercise of ordinary care.

[3] And as the result of this general rule, it is established that the employer is not guilty of negligence in permitting the use of an appliance which the experience of the manufacturer and the industry in which it is used has sanctioned as reasonably safe; and accordingly that an employer discharges his duty if he obtains the appliance from a reputable manufacturer and uses ordinary care in inspecting it before using; that he is not guilty in failing to discover latent defects which ordinary care would not disclose; and that when obtaining the appliance from a reputable manufacturer he is justified in assuming, in the absence of anything to the contrary, discoverable by ordinary tests, that the article is properly made. In such cases ordinary care does not require the purchaser of an appliance to tear it to pieces in a search for hidden defects.

[4] But the rule stated does not absolve the employer from the duty of making what is, under the circumstances of the given case, a reasonable inspection; and defects discoverable by a reasonable and ordinary visual inspection are not latent. These propositions are sufficiently illustrated by the following authorities: Richmond & Danville R. R. Co. v. Elliott, 149 U. S. 266, 13 Sup. Ct. 837, 37 L. Ed. 728; Westinghouse Elec. & Mfg. Co. v. Heimlich (C. C. A. 6) 127 Fed. 92, 62 C. C. A. 92; Petroleum Iron Works Co. v. Boyle (C. C. A. 6) 179 Fed. 433, 102 C. C. A. 579; Coal & Car Co. v. Norman, 49 Ohio St. 598, 605, 32 N. E. 857.

[5] The defendant urges that the application of the rule stated leaves no room, under the testimony, for an inference of defendant's negligence in failing to discover and remedy the defective condition of the bolt fastening; the argument being, in substance, that the defendant could not have discovered that the bolt was not clamped upon the inner surface of the wall without removing the plastering thereon or pulling out the bolt connection, and that this it was not required to do; that there was no evidence that the bolt was not originally soldered in, nor was it possible to determine from a visual inspection prior to the accident whether or not soldering had been used; and that it is impossible to determine the cause of the accident, whether from originally defective construction or from the later imposition of too great a strain. This was the view adopted by the trial judge.

[6] The mere fact of the accident was insufficient to establish negligence on the part of defendant. Carnegie Steel Co. v. Byers (C. C. A. 6), 149 Fed. 667, 82 C. C. A. 115, 8 L. R. A. (N. S.) 677. But we think the testimony properly raised a question of fact for the determination of the jury whether the defendant, in failing to discover and remedy the alleged defect, exercised due care, or, otherwise stated, whether the defendant knew or ought to have known of the alleged unsafe condition. We cannot say, from the record, that even an external visual inspection would not have suggested at least a reasonable question, whether the bolt passed through the wall, or even

whether it was properly secured therein by solder. From the description given of the connection, it would seem that the hole through which the bolt entered the wall would naturally have been made as large as the lug which the inner end of the bolt engaged, thus leaving originally a space about the bolt, between the outer surface of the wall and the lug, to be filled in with wedging or solder; while for a bolt passing through and clamped to the inner side of the wall the hole would not naturally be appreciably larger than the bolt. And in view of the testimony of the unsafe nature of the construction shown to exist, and the tendency of such construction to rapid disrepair, and the fact that the record does not affirmatively show that there was anything in the external appearance of the bolt connection, or in any representations made to defendant, suggesting that the bolt was either clamped on the inside of the wall or soldered therein, it cannot be said, as matter of law, that it was not open to the jury to find the defendant negligent in failing, for a period of more than six years after it had acquired the plant (if it did so fail), to make such external examination as was reasonably necessary to ascertain the manner of connection. If, as suggested by defendant's counsel in the cross-examination of witnesses, the construction in question had existed for 13 years, this fact, if known to the defendant, but emphasizes the necessity of inspection. In view of the testimony as to the pulling out of the entire connection, including bolt, lug, and brick, and the evidence presented as to the manner of connection, we think it was open to the jury to infer that the accident happened from defendant's failure to use ordinary care in discovering and remedying the defective connection.

The testimony as to the tightening of the new wire immediately preceding the accident was not such as necessarily to exclude a proper inference of defective condition prior thereto.

In reaching this conclusion, we have not overlooked plaintiff's concession that under the doctrine in Coal & Car Co. v. Norman direction of verdict for defendant would have been proper but for the subsequent enactment of what is now section 6242 of the General Code of Ohio, which plaintiff contends was passed for the purpose of relieving the employé from the obligation to prove notice to the employer of the defect and absence of equal knowledge on the part of the employé. We have not felt justified in accepting this concession, and so we have not found it necessary to consider the effect of the statute referred to.

[7] We think it cannot be said, as matter of law, that plaintiff assumed the risk in question, or that his own negligence contributed to the accident. The case presented is not one where the act of the employé in putting in the new wire constituted, as matter of law, an inspection by the employer or by the employé. The case is distinguishable in this latter respect from Britton v. Central Union Telephone Co., 131 Fed. 844, 65 C. C. A. 598, where it was held, under the record there presented, that:

"The practice and custom under which it (the telephone company) conducted its operations made every lineman his own inspector, and linemen were required to make such inspection and testing of poles before going on them as

they should deem essential to their own safety in doing the work they assumed to do."

The questions of assumption of risk and contributory negligence were properly for the jury.

The judgment of the Circuit Court should be reversed, and new trial ordered.