### EARLES v. HOWARD.

(District Court, D. Maine. January 10, 1921.)

No. 590.

**1. Master and servant ⬅124(4)—Failure to inspect borrowed hoisting rope negligence.**

An employer, working on a ship, is liable to his employé for negligent failure to inspect a hoisting rope furnished by the ship, which the employer directed the employé to use, since he is bound to furnish safe instrumentalities, whether they were owned or borrowed by him.

---

2. **Master and servant** &#9901;106 (1)—**Furnishing defective hoisting rope, borrowed from ship, held negligence.**

    An employer, who directed his employé to use a boatswain's chair furnished by the ship, the hoisting rope of which was so old and frayed that it broke, *held* negligent.

3. **Master and servant** &#9901;218 (4), 230 (6)—**Workman hoisted with defective rope held not chargeable with assumption of risk or contributory negligence.**

    Evidence that a hoisting rope, which broke, causing injury to an inexperienced workman, was not so obviously defective that it was apparent it would not sustain his weight, *held* not to show that he assumed the risk or was contributorily negligent.

4. **Master and servant** &#9901;217 (13)—**Risk of defective rope not assumed, unless danger is palpable.**

    A servant assumes the risk of injury, because of a defective rope furnished by the master for his use, only if the danger was palpable and appreciated, or could have been appreciated by the prudent and reasonable exercise of the senses.

5. **Death** &#9901;95 (4)—**$2,300 awarded to aged parents for death of 24 year old son.**

    Evidence that decedent, who was 24 years old, had furnished some support to his parents, and intended, after his marriage, to take charge of his father's farm, *held* to authorize an award of $2,300 damages under Rev. St. Me. c. 92, §§ 9, 10, entitling the parents to a fair and just compensation for the death of a son, not exceeding $5,000, as that statute had been construed by the Supreme Court of the state.

In Admiralty. Libel by Catherine Earles, as administratrix of the estate of George W. Cartledge, deceased, against Frank A. Howard. Decree entered for libelant.

See, also, 268 Fed. 94.

Paul E. Donahue and Nathan W. Thompson, both of Portland, Me., for libelant.

Hinckley & Hinckley, of Portland, Me., for respondent.

HALE, District Judge. This libel is brought by force of the Revised Statutes of Maine, chapter 92, §§ 9 and 10, to recover damages occasioned by negligence of the respondent causing the instantaneous death of George W. Cartledge, the libelant's intestate, while employed by the respondent, and at work on the Italian steamship Mrav. The death is alleged to have been "caused by the wrongful act, negligence or default of the respondent." The case has been before me upon the respondent's motion to dismiss the libel. 268 Fed. 94, 95. I denied the motion, holding that the libelant had stated a maritime case, arising under the statute of Maine, and that it may be enforced in a court of admiralty.

[1] The proofs show that on May 6th the respondent, an electrician, was doing certain electrical work under contract with the steamer, then lying in the Portland harbor, and that he had employed Cartledge as one of his workmen. The work of the respondent, on the day in question, consisted of rigging a range light on the mainmast of the steamship. While doing this work, it became the duty of some workman to go up the mainmast. Cartledge was directed to perform this duty. The range light was to be placed on the mainmast, at a height of

&#9901;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

between 40 and 50 feet above the deck, and it became necessary to go up the mast in a boatswain's chair, lifted by a hoisting rope. In accordance with instructions, received from Merrill, the foreman, Cartledge got into the boatswain's chair, which had previously been rigged upon the ship, and, with the aid of the foreman, was hoisted up the mainmast for the purpose of rigging the light. When he had been hoisted a distance of 40 to 45 feet above the deck, the line, running from the chair up through a sheave, near the truck of the mast and back upon the deck of the vessel, broke, causing Cartledge to fall with great force upon the deck of the ship, whereby he was rendered unconscious, and was removed to the hospital, where he shortly died, without recovering consciousness. The boatswain's chair, with the rigging and rope, was furnished by the ship, at the request of the respondent's superintendent, Floyd; the respondent having failed to furnish such chair. It appears from the proofs, however, that, previous to the injury, no inspection had been made of the line, by the respondent or by anybody in his employ. It does not appear that the respondent gave to any of his agents instructions to make examination. The testimony leads to the inevitable conclusion that the rope was old, weak, defective, and unfit to be used in hoisting heavy weights, although it had recently been used in hoisting. It is clear that, if such examination had been made, the imperfect condition of the line would have been discovered. Even though the line was furnished by the ship, and even if it should be found that there was negligence on the part of the ship, such negligence does not excuse the respondent. He was under the duty to exercise the care of a reasonably prudent man in furnishing to his workmen a safe place to work and safe instrumentalities to work with, and in warning them of dangers which they did not know, and to which they would be exposed in working with the instrumentalities furnished by him. Whether he owned such instrumentalities, or borrowed them, is not of vital importance in fixing his responsibility. Vanier v. Swett (D. C.) 243 Fed. 939, 942; Northern Pacific Railroad Co. v. Peterson, 162 U. S. 346, 353, 16 Sup. Ct. 843, 40 L. Ed. 994; Bush v. Cincinnati Traction Co., 192 Fed. 241, 244, 112 C. C. A. 499; Chambers v. American Tin Plate Co., 129 Fed. 561, 562, 64 C. C. A. 129.

[2] Upon the testimony, I can have no doubt that the injury was occasioned by the negligence of the respondent in failure to exercise reasonable care in furnishing a proper hoisting line for use of the libelant's intestate.

[3, 4] 2. The respondent says that Cartledge assumed the risk of using the rope; that it was his duty to inspect it before allowing himself to be hoisted up with it.

The proofs do not sustain this contention. Cartledge had a right to assume that the boatswain's chair, and hoisting line, furnished him by the respondent, were reasonably safe, and that they had been suitably examined by the master. Cartledge was not a man of experience; he was in the use of instrumentalities that, on the outside, appeared to be fit for use. The foreman testified that the rope looked all right to him. There is nothing to indicate that Cartledge had suffi-

cient knowledge of ropes to judge as to the soundness of the rope in question. Unless the danger was palpable and appreciated, and could have been so appreciated by the prudent and reasonable exercise of the senses, there could be no assumption of risk. The testimony fails to show an assumption of risk by Cartledge. · The Aurora (D. C.) 178 Fed. 587, 590; Republic Elevator Co. v. Lund, 196 Fed. 745, 749, 116 C. C. A. 373, 45 L. R. A. (N. S.) 707; Texas & Pacific Railway v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188. The proofs fail, also, to show any contributory negligence, or fault on the part of Cartledge.

[5] 3. The question of damages requires careful consideration. This suit is brought by the personal representative of Cartledge for the exclusive benefit of his father and mother, now living on a small truck farm, near Augusta, Ga., the father being 65 years old, and the mother 63 years old; both are in a somewhat feeble state of health and unable to work all the time they having three other children, all married, and apparently unable to give any material assistance to their parents. The statute creates the sole right of compensation and defines the standard of such compensation. The parents are entitled to "a fair and just compensation not exceeding $5,000, with reference to the pecuniary injuries resulting to them from such death." This statute is evidently derived from the English Statutes of 9 and 10 Vict. c. 93 (1847), known as "Lord Campbell's Act." · The leading case in Maine upon the construction of this statute is McKay v. Dredging Co., 92 Me. 454, 458, 459, 43 Atl. 29, 30. In that case Mr. Justice—afterwards Chief Justice—Emery, in speaking for the court, in a clear and enlightening opinion, discusses the statute and observes that—

'  "Under this statute pecuniary damages can never be ascertained with exactness nor indeed with any satisfactory degree of approximation. Unlike ordinary questions of the legal measure of damages, this relates wholly to the future. There can never be knowledge. The conclusions arrived at must be based on probabilities, instead of facts. The only facts that can be ascertained are those that occur before or at the time of the death. From such data, what would probably have occurred, had not the wrongful act or negligence of the defendant intervened, must be conjectured as carefully as possible."

It appears from the proofs that Cartledge was a· young man, 24 years of age, and in good health. He had left home about 5 years before his death, and had enlisted in the United States army, where he served during the Great War. He left the army at the end of the war, on account of his parents' poor health and their need of his care; he was then intending to return and carry on the farm. In the meantime he sought some remunerative employment, and was set to work by the respondent. Between the dates of April 27th and May 6th he had received the sum of $91.98, having worked overtime. While he was in the army his wages were from $15 to $30 a month; and during these five years he had sent his parents over $700, had furnished them also a mule team said to be worth $350, and had given something to pay his mother's hospital bill. He was engaged to be married to Miss Earles, the administratrix in this case, and

it was their intention, as soon as they should be married, to return to the farm, and run it for his father and mother.

Following the line marked out by Chief Justice Emery, in the McKay Case, it is the duty of the court to weigh the evidence and balance probabilities. The marriage would have brought to the parents some services of the son and his wife. But, on the other hand, it would have deprived them of some of his earnings. So far as I can find, from reported cases, it has been the policy of courts to take care not to allow excessive damages to beneficiaries of the age of the parents in this case. But, so far as their condition was made less favorable pecuniarily by the wrongful act of the respondent, they are entitled to recover enough damages to make them "a fair and just compensation." From a careful estimation of the probabilities, after examination of the evidence, I think $2,300 is the utmost that can be allowed as damages.

A decree may be entered for the libelant in the sum of $2,300. The libelant recovers costs.