[Louisville & Nashville R. R. Co. v. Campbell.]

# Louisville & Nashville Railroad Company v. Campbell.

*Action by Employe to Recover Damages for Personal Injuries.*

1. *Master bound to use only reasonable diligence to discover defects.* When the undisputed evidence shows that the most careful inspection of machinery demanded by the law would not have discovered the defect in a brake rod, by which an employe was injured, and there being no proof that such defect was known, the employe is not entitled to recover damages for such injuries.

2. *Argumentative charge.*—An instruction requested in an action for injuries inflicted by a defective brake-rod to the effect that the jury might look to the fact, if it be a fact, that the brake was used by the plaintiff several times on the same day prior to the accident without injury as showing its condition, is argumentative and properly refused.

APPEAL from Montgomery Circuit Court.

Tried before Hon. JOHN P. HUBBARD.

This action was brought by T. J. Campbell, to recover damages for personal injuries alleged to have been sustained on account of a defective brake-rod and resulted in a judgment for plaintiff.

The defendant excepted to the refusal of the court to give certain charges, among which were the following: (1) "If the jury believe the evidence, they must find for the defendant." (2) "If the jury believe from the evidence that the defect in the brake-rod could not have been discovered by any ordinary inspection thereof, and if the jury find from the evidence that the injury to plaintiff was the result of the defect in said brake-rod, then the jury must find for the defendant." (3) "It was not negligence on the part of defendant's inspector in failing to take to pieces the brake which was alleged to have been the cause of the accident." (4) "If the jury believe the evidence in this case, the defect in the brake-rod which was the cause of the accident could not have been discovered by any ordinary method." (5) "It was not negligence on the part of the defendant or its agents in failing to discover the defect in the brake-rod, which could not have been discovered by any ordinary inspection." (6) "It was not negligence on the part of the defendant or of its agents in failing to discover the defect in the brake-rod, if it could not have been discovered by any of the usual or ordinary tests or inspections, as made by railroad companies

generally." (9) "The defendant was under no duty to make any other inspection of said car or brake than was usual or customary on well-regulated railroads; and, if the jury believe such inspection was made, then they must find for the defendant." (11) "The burden of proving negligence on the part of the defendant or its employees is upon the plaintiff; and, unless the evidence satisfies the jury that a reasonably prudent and careful man in the ordinary affairs of life would have acted differently, under like circumstances, from defendant's inspector, then they must find for the defendant." (12) "If the defect in the brake-rod could not have been discovered by any such inspection as is usual or customary by well-regulated railroads, then it is not negligence on the part of defendant or its agents in failing to discover the defect in the brake-rod." The substance of the eighth charge is set forth in the second head note.

J. M. FALKNER, for appellant, on the point that the master might, in making its inspections, safely rely on the practice of well-regulated railroads, cited *L. & N. v. Allen,* 78 Ala. 494; *Ga. Pa. v. Propst,* 83 Ala. 578; *L. & N. v. Jones, Ib.* 376; *Hall v. L. & N.* 87 Ala. 708.

CHARLES WILKERSON, for appellee. No brief came to hands of reporter.

HEAD, J.—Appellee, basing his action upon the statute, Code.1886 § 2590, sues the appellant to recover damages for personal injuries sustained. The complaint properly alleges facts essential to a recovery under that part of the statute on which it relies, which are, 1. That he was in the employment of the appellant as a railroad brakeman, 2. That a brake on one of the cars in appellant's service was defective, 3. That while operating said brake, in the performance of the duties of his employment, he was injured by reason of the defect therein, and 4. That said defect arose from, or had not been discovered or remedied owing to the negligence of appellant or some person in its service and charged by it with the duty of seeing that the brake was in proper condition. In order to recover, it devolved on appellant to establish affirmatively, by evidence, each of these allegations. The first three are established without dispute and there is no controversy about them. The issue really tried before the jury was upon the fourth allegation, and the question presented for review is, whether the court, in refusing instructions requested by appellant, failed to prop-

erly submit to the jury the questions of negligence therein involved. The bill of exceptions contains all the evidence and there is no material conflict whatever in it. It shows the following facts: On defendant's freight train, running from Mobile to Montgomery, plaintiff, as his duty called, attempted to apply the brake on one of the cars, and in the effort to do so, the brake-rod broke in two, precipitating him to the ground and causing his personal injury. The brake was attached to the car in the following manner: On the end of the car was a bar or plate of iron one-half inch thick and about four inches wide, rising over the end of the car. The brake-rod passed through this bar or plate, and there was a ratchet-wheel through which the rod also passed, which turned on top of the bar, and there was a dog by the side of the ratchet-wheel which held that down. At the bottom or end of the brake-rod, there was what is called a stirrup which the end of the rod passed through, and a key was then passed through the end of the brake-rod which held it in place. The chain is fastened to the brake-rod sometimes close down to the stirrup and sometimes four or five inches above it. The key which passes through the brake-rod and holds it is called a split-key, made by bending a small piece of iron so as to bring the ends together. The key is put through the rod and the ends are then pulled apart. By taking out this key the rod can be lifted up a short distance until stopped by the chain reaching an obstruction above it. There is slight play in the rod when the key is in. Plaintiff testified that the split-key could easily be removed and the brake-rod lifted up two or three inches. Shortly after the accident, the broken rod was examined by several persons, who testified as witnesses on the trial, and their testimony is without contradiction, that the rod broke at a point close to where it passed through the ratchet wheel, underneath that wheel and between it and the bar or plate of iron on which the wheel rested. The broken ends of the two pieces of the rod were examined by the witnesses, and they testify as follows as to their appearance: R. W. Walker testified, "It looked as though there was an old break, or crack rather, under the ratchet-wheel and between it and the plate or floor. The crack was on the brake-stem or rod. The reason he thought it was an old crack, there was some rust on about half of the break." One Shields testified, "There was a new break of probably three-fourths of the rod and about one-fourth seemed to be an old crack." George Morris testified, "There was an old crack in the rod, part of the break was old and part new. The break was

about half old and half new." One Scott testified, "It showed part new and part old break—a part of the surface of the brake-rod was dark and the other part bright, which indicated that the brake-rod was partly broken before the rest broke off; thought it was about half old and half new break." It was also shown, without contradiction, by a number of witnesses, plaintiff himself corroborating them, that the break or crack in the rod, being located under the ratchet-wheel, as described, could not have been seen or detected without taking out the rod key underneath, and raising the rod several inches, until the point where the crack was rises above the ratchet-wheel. There is no evidence, material to notice, other than the statements of the witnesses above quoted, tending to show how long the old break or crack had existed, or how long the car had been in use. The only description we have of the car is that given by defendant's Montgomery inspector, who was introduced by the plaintiff and who states, "that the car from which plaintiff fell was an L. & N. car No. 28801; that he did not know how long this car had been in use; that it was in good running condition at the time of the accident;" and the statement of the Mobile car inspector, who was defendant's witness, that he inspected L. & N. car No. 28801 on the 2nd of March 1891 (the day of the accident) and also on the 15th and 23rd days of February preceding, and that at neither of said inspections did he find any thing wrong with the car or any part thereof. At the inspection in Mobile, on the day of the accident, the inspector did not take the brake-rod out, or raise it up, and examine it. He made the inspection after the train was coupled together, after dark, and in the light of a torch which he carried in his hand, by passing from the engine to the caboose on the one side of the train and from the caboose to the engine on the other, and looking at each car and all the parts thereof, as well as he could, as he was walking along, the inspection occupying some fifteen or twenty minutes. The nature of the previous inspection is not shown. Plaintiff's testimony tended to show that, in operating a brake, there is more strain on the part of the rod where the defect was found than any other part, and the strain is greater when applied while going around a curve (which was the case when this accident occurred) than when on a straight track. At the time of the accident, the train had proceeded from 130 to 150 miles from Mobile, and during that run plaintiff had applied this brake not less than eight or ten times and found it to work well; saw nothing unusual about it and nothing to indicate that it

was in any wise defective. He had been railroading about thirteen years and was a skillful and competent brakeman. The evidence is also without conflict that in the universal practice, experience and custom of well conducted railroads, inspections are not made by taking the machinery or appliances apart to look for hidden defects, unless there is something in the appearance or working of the same indicating the existence of such a defect, but that such inspections are. always made by external examinations, similar to those made by defendant's inspectors; and one witness testified that it would take a great amount of time and retard business very much to take out all the keys and lift up all the brake-rods and examine them. The conductor also testified that the brake-rods were usually hard to get off, and the pins rusty, and it would take considerable time if the rods and brakes were taken apart every time a train was inspected; and that they were not intended to be taken off at every terminal station.

In the light of this evidence, the question presented by most of appellant's requests for instructions which were refused, is, whether, as matter of law, it could be inferred that the appellant failed to perform any duty it owed the appellee. The action being by an employe it is not questioned that, notwithstanding the difficulties which may surround the effort, and frequently the impossibility of making the proof, the burden is upon him to prove the negligence alleged, and not upon the defendant to disprove it.—*L. & N. R. R. Co. v. Allen*, 78 Ala, 494. So that, in this case, it devolved upon appellee to show, upon the question of negligence, first, that the defect *arose from*, or second, that it was not *discovered or remedied* owing to, the negligence of the defendant or some person in its service and charged by it with the duty of seeing that the brake was in proper condition.

1. There is a total absence of evidence tending to show when, how or under what circumstances the defect arose. Whether it existed when the car was originally furnished to appellant's service, or subsequently arose in use, we are wholly uninformed. There was nothing, therefore, upon this proposition of negligence, to submit to the jury.

2. The only insistence which it can be conceived appellee can invoke with any show of argument, in support of the second proposition, is, either that the ordinary duty of car inspection, incumbent upon railroad companies, requires that the brake-rods be taken out or removed and examined for hidden defects, or, if not, that this car had been so long

in use and the defect of such long standing, as to raise the extraordinary duty of making such a special inspection thereof.

In *L. & N. R. R. Co. v. Allen, supra*, where the question was whether the defendant company should have applied the hydraulic water test to a locomotive boiler in order to discover if there were latent defects, we had occasion to consider the duty of railroad companies in respect of such defects, and said: "They are not responsible for accidents from defects not discoverable by tests which are both practicable and usual, and such as persons of ordinary prudence engaged in like business are accustomed to adopt under similar circumstances. The law is reasonable," we said, "and does not require such excess of caution as to embarrass or render impracticable the operation of the road, although the degree of care and vigilance required is not to be made dependent upon the pecuniary condition of the company so as to expand or contract with the fluctuations of its finances." We held, upon the evidence, "that the hydraulic test as applicable to steam boilers," though efficient for discovering otherwise undiscoverable defects, "is an extraordinary and rare test not in customary or common use by either railroads or other persons, except when engines are first manufactured to be put on the road, unless they failed to work well; or except when engines are overhauled periodically in the work-shops of the company;" and that, as matter of law, it was not the duty of the company to apply it.

In *A. G. S. R. R. Co. v. Arnold*, 84 Ala. 159, we said: "If railroads, in the administration of their affairs, conform to the rules adopted or in general use by prudently conducted railroads they are free from blame, unless they violate or disregard some positive requirement of the law and thereby inflict an injury." "It would be monstrous," we said. "to hold that notwithstanding the railroad company did precisely and fully what men of ordinary prudence were in the regular habit of doing, under similar circumstances, yet this defendant is liable for the injury the plaintiff suffered therefrom." To like effect are the following cases: *Ga. Pac. R. R. Co. v. Propst*, 83 Ala. 518; *L. & N. R. R. Co. v. Jones, Ib.* 376; *Hall v. L. & N. R. R. Co.* 87 Ala. 708; *Holland v. Tenn. C. I. & R. R. Co.* 91 Ala. 444.

We have seen that the undisputed evidence shows that ordinary inspections of brakes are never made on well regulated railroads, by taking out or removing the rods; and that it would be impracticable to do so. Indeed, common

[Louisville & Nashville R. R. Co. v. Campbell.]

observation and experience suggest the impracticability of such a system. If one brake should be taken apart and examined, all should; and if all, then every other machine or appliance connected with the train and composed of adjustable parts. To do this would cripple and embarrass the operation of the road beyond any requirement of the law. We are of opinion that such an inspection is an extraordinary duty, called into being only by some exigency which would suggest to the mind of a reasonably prudent person a necessity for its performance.

Was there evidence of the length of time the car had been used, and the defect in the brake had existed, from which the jury could have inferred an exigency calling forth the extraordinary duty of a special inspection by taking out or lifting up the brake-rod? There is no evidence upon the subject, except that the appellant had the car in his service on February 15th and 23rd preceding the accident, when it was inspected in Montgomery, and the statements of the witnesses, quoted above, that the ends of the broken rod showed that the break was partly an "old" break or crack and partly new. The adjective "old," as used by the witnesses, was manifestly employed by them to distinguish that part of the rod which, from appearances, had been previously broken or cracked, from the part which, from its fresh and bright appearances, was broken at the time of the accident. It was used to describe a *previous condition* of a part of the rod, and was evidently not intended to indicate how long the break or crack had existed. It was impossible for the jury to form an opinion, from such an expression, of the length of time the break had existed, except that it had been long enough for rust to accumulate, and that is too uncertain a predicate to rest this charge of negligence upon. There was nothing, therefore, upon which to submit this question to the jury.

The inspection of the train made in Mobile may, under its particular circumstances, have been an imperfect and careless one. We do not decide that question. It is enough that the undisputed evidence shows that the most careful inspection demanded by the law would not have discovered the defect: wherefore the manner of that which occurred is immaterial.

Our conclusion is that the Circuit Court erred in refusing to give the general affirmative charge for the defendant as requested. So also, upon the principles herein declared, charges 2, 3, 4. 5, 6, 9, 11 and 12 ought to have been given. In view of what we have said in reference to the inspection

at Mobile, charges 7 and 10 need not be considered. Charge 8 is an argument and was properly refused for that reason. We think charge 13 may be disposed of as abstract, if not erroneous.

Reversed and remanded.

*Action by Employe to Recover Damages for Personal Injuries.*

