# Owen v. Ala. Gt. So. R. R. Co.

## Injury to Servant.

(Decided February 6, 1913. Rehearing denied April 23, 1913.
61 South. 924.)

1. *Master and Servant; Injury to Servant; Defective Tools.*—
Where the action was under subdivision 1, section 3910, Code 1907,
by a servant for injuries alleged to have been occasioned by a de-
fective tool furnished him to work with, plaintiff could not recover
by merely showing that the tool was defective, but must go further
and show affirmatively that the defect complained of arose from,
or had not been discovered or remedied by the reason of the negli-
gence of the master, or of some one in authority in its behalf.

2. *Same.*—Where the tool by which plaintiff was injured was not
originally defective, and the defect that existed causing the injuries
was latent and discoverable only by practical and continued use by
an operator, defendant was not negligent for a failure to discover
such defect before delivering the tool to plaintiff for use.

3. *Same; Statute.*—Subdivision 1, section 3910, Code 1907, does not
change the nature of the duty owed by masters to their servants to
use ordinary care and diligence to furnish safe and suitable instru-
mentalities and appliances and ways, etc., so as not to expose ser-
vants to unnecessary perils, exercising such care and diligence as
men of ordinary prudence would exercise under like circumstances.

4. *Same; Superintendence.*—In the absence of proof that it was
the part of W.'s duty to procure the machines originally, or inspect
them afterwards, or that he knew that the particular motor was
defective, or by any practicable inspection could have discovered
the defect, evidence that he was plaintiff's boss, and had charge of
tools, including compressed air or motor drills, was not sufficient to
show that he was engaged in superintendence in such sense as to
render the master liable in furnishing the servant with a defective
motor by which he was injured.

5. *Same; Incompetent Fellow Servant.*—Where the servant claimed
that his injuries resulted from the negligence of an incompetent
fellow servant, the burden was on plaintiff to show that the injury
was the result of the act or omission of a fellow servant, that he
was incompetent to perform the duty he was required to perform,
and that such incompetency was known to the master or that the
master could have acquired knowledge by the exercise of due dili-
gence prior to the accident.

6. *Same.*—The evidence examined and held not sufficient to show
that defendant's servant whose alleged negligence caused plaintiff's
injury, was incompetent to perform the work required of him, or
that, if incompetent, that defendant had knowledge or opportunity
for knowing thereof.

7. *Evidence; Experts; Competency of Employee.*—Where a particular employment required technical skill, an expert shown to have a general acquaintance with the employment, and who knows the particular services incident thereto, and has observed a particular person in the course of the employment, may testify that such person is competent or incompetent; but such opinion is not allowable except in instances where the jury cannot be assumed to understand the subject, and able to reach an intelligent conclusion of their own without expert aid.

8. *Same; Defective Machinery.*—Where a motor, which a witness found for his own use in defendant's shop the next morning after plaintiff had been injured while using a similar motor, was not shown to be the same motor that plaintiff was using when injured, such witness was not entitled to testify as to the defective condition of the motor he found.

9. *Same.*—Where a plaintiff was injured by a defective motor drill, questions to him as to whether his boss did not know that those sockets had burrs on them, etc., not being confined to the socket used by plaintiff at the time of his injury, were properly excluded.

10. *Same.*—Where a plaintiff was injured by a defective motor drill and claimed that his fellow servant was incompetent, and that the injury resulted on account of such incompetence, a question as to what the fellow servant's duty was about cutting off air when directed, was immaterial; as it was asked prior to the introduction of any evidence that such fellow servant was incompetent.

11. *Same; Hearsay; Declaration by Foreman.*—What a foreman of plaintiff told a witness after a plaintiff had been injured as to the place where plaintiff was working when injured, was hearsay and inadmissible.

12. *Trial; Exclusion of Evidence; Offer of Proof.*—Where the record does not disclose the evidence expected to be elicited by the questions, the court will not be put in error for sustaining objections to such questions.

APPEAL from Birmingham City Court.

Heard before Hon. CHARLES A. SENN.

Action by William C. Owen against the Alabama Great Southern Railway Company, for damages suffered while in its employ. Judgment for defendant, and plaintiff appeals. Affirmed.

While in the service of the defendant company as a boiler maker, plaintiff was injured by having his gloved hand caught in a drilling machine, which was at the time being used by himself and under his exclusive control. The mode and circumstances of the injury were substantially as follows: Plaintiff was drilling out stay

bolts in a boiler with an air motor drill attached to a motor with a reversible shut-off valve, so that the power could be shut off by the operator at the motor. The air was conveyed to the motor by a hose from a post 20 or 25 feet distant, and the power could also be shut off from this hose at the post. The motor weighed about 40 pounds, and after the boring out of each bolt it was moved about 4 inches to the next bolt. While this was being done it was customary for the operator to shut off the motor air valve. Plaintiff was furnished with a helper, subject entirely to his orders, whose duty it was to aid in setting up the motor, and to cut off the air at the post, always under plaintiff's direction or order. Plaintiff went to work with his machine about 8:30 a. m., and used it continually until about 12 m., at which time the accident happened. In reversible motors, the shut-off valve or appliance is effective when set at the center, and turning it in either direction turns on the power. When new, these shut-offs worked perfectly, but after being in use for a while most all of them get so they will occasionally fail to entirely stop the motor, due to a slight leak in the valve, and sometimes caused by the presence of grit. This is likely to occur from one to five or six times in the course of a single day's work. Plaintiff had used this shut-off between 30 and 100 times that morning, and it had failed to stop the motor two or three times. Just before his injury he had set the valve at the center for the purpose of stopping the motor, but it had failed to stop it completely, and the drill was still slowly revolving. He proceeded to move the machine to the next bolt, and while so doing either the drill or the socket caught the glove on his hand. He called to his negro helper, "Cut off the air," or "Go cut off the air.". The helper was standing at plaintiff's back about 25 feet from the air

post, and instead of cutting off the air at the post, he reached over plaintiff and tried to cut it off at the motor, but instead turned it on in full force, and plaintiff's hand was seriously torn and injured. The other features of the evidence and rulings of the court sufficiently appear from the opinion. The trial court gave the general charge for the defendant upon its written request, and the appellant complained of this, and of the rulings of the court on the evidence.

HARSH, BEDDOW & FITTS, for appellant. Counsel discuss the evidence in connection with assignments 1, 2, 14, 15, 16 and 17, all having reference to proof as to whether the fellow servant of the plaintiff was competent or incompetent, such testimony attempted to be elicited as expert evidence, and insists that the court was in error in its rulings thereon.—*McCartley, et al. v. L. & N.*, 102 Ala. 194; *Montgomery v. Gilmer*, 33 Ala. 133; *Culver v. Ala. Mid.*, 108 Ala. 334; *K. C. M. & B. v. Weeks*, 135 Ala. 619; *Rollins v. State*, 136 Ala. 126; 99 C. C. A. 381; 117 Mass. 122; 20 C. C. A. 234; 85 Am. St. Rep. 384; 104 Am. St. Rep. 665; Wigmore, sec. 1984; Greenl. sec. 441; Jones on Evid. p. 87. Under assignment 3 and 4 counsel discuss the rejection of evidence of the same expert with respect to the machine, and on the above authorities insists that the court was in error in its ruling thereon. This is all under the assumption that the drill as motored by the compressed air machine was simple, and readily within the range of the common knowledge of all men, which appellant insists is not true.—*McCartley v. L. & N., supra;* 104 Am. St. Rep. 671. It is competent to show the fact that the motor was found in the same place where appellant had had it when his hand was hurt as showing it to be the same motor as hurt the plaintiff.—*Birming-*

*ham Union v. Alexander*, 93 Ala. 134; Greenl. pp. 81-4; Jones on Evid. sec. 6. It is competent to show whether the witness asked the boss about the machine at the time.—*U. S. C. I. & P. & F. Co. v. Granger*, 162 Ala. 637; 54 Pac. 759. The plaintiff should have been allowed to show the duty of his helper in cutting off the air. —*Sloss-S. S. & I. Co. v. Green*, 159 Ala. 182. The question as to the burs on the socket during the time the witness had been working there should have been permitted.—Authorities supra. If plaintiff was hurt while operating the motor, which was put into his hands by the boss boiler maker, and if the boss pointed out this machine to Hopp as the one with which the injury had been inflicted, then Hopp was brought into position where he could properly describe the condition of the machine, and this description became competent and legal testimony.—*Bir. U. v. Alexander*, 93 Ala. 134; *Davis v. Kornman*, 141 Ala. 489; *Sloss-Sheffield v. Green, supra; Adams Mach. Co. v. Turner*, 162 Ala. 352. The court erred in charging affirmatively for defendant.—*Chambless v. Mary L. C. & I. Co.*, 104 Ala. 656; *Culver v. Ala. Mid., supra; Western S. C. & F. Co. v. Cunningham*, 158 Ala. 370; *Col. A. & E. Co. v. Bingham*, 169 Ala. 554.

A. G. & E. D. SMITH, for appellee. None of the questions first discussed by appellant called for evidence that could bind defendant.—*R. & D. v. Hammond*, 93 Ala. 181; *R. R. Co. v. Carl*, 91 Ala. 271; *R. R. Co. v. Maples*, 63 Ala. 601; *Rickets v. R. R. Co.*, 85 Ala. 600. Questions relating to the incompetency of a fellow servant were related to matters of common understanding, and could not be made the basis of expert opinion.— *Warden v. L. & N.*, 94 Ala. 277. Where an employee is injured by reason of a defect, the burden is on him to

show not only the defect and the consequent injury, but that it was caused or not discovered and remedied owing to the negligence of the master or some persons employed by him charged with that duty.—*A. G. S. v. Brock,* 161 Ala. 351; *R. R. Co. v. Allen,* 91 Ala. 487; s. c. 99 Ala. 359, and authorities cited. The evidence showed that the fellow servant was fully competent to cut off the air at the post, that it was a simple operation, and that the adoption of that course would have rendered the machinery absolutely safe.—*M. & O. v. George,* 94 Ala. 199; *M. & C. v. Graham,* 94 Ala. 545; *Hall v. R. R. Co.,* 87 Ala. 708. The facts of this case bring it squarely within the principles laid down in *Kilby F. & S. Co. v. Jackson,* 57 South. 691, and authorized the giving of the affirmative charge.

SOMERVILLE, J.—The first count of the complaint is framed under subdivision 1 of section 3910 of the Code, and bases plaintiff's right of recovery upon a defect in the machine furnished him to work with.

The second and third counts are framed under subdivision 2 of the statute, and impute the injury to the negligence of a person in the service of defendant who had superintendence intrusted to him, while exercising such superintendence; the charge being that such person "caused or allowed plaintiff's glove or hand covering to be caught on the occasion aforesaid, and plaintiff to suffer said injury or damage."

The fourth count charges a breach of common-law duty owed by defendant to plaintiff in this, to wit: "That defendant negligently furnished the plaintiff a person to help him in doing said work which plaintiff was employed by defendant to do, and which person so furnished by defendant for said purpose, to wit, a negro called Charlie, whose name is otherwise unknown

to plaintiff, was not reasonably competent to do that part of the work which he was employed by defend-to do, to wit, act as helper for plaintiff in and about operating said machine."

We will separately discuss these three phases of the case.

1. The air motor with which plaintiff was working when injured was supplied to him by defendant's boss boiler maker, under whom plaintiff and his helper were working, with the injunction to use it in his work. When plaintiff applied to the boss, Weise, for a motor, the latter replied that there were some in a box in the back shop, and he or the toolroom boy went and got this motor and brought it to plaintiff. Under the first count plaintiff could not recover merely upon a showing that the motor was defective. He was bound to affirmatively show that the defect complained of arose from, or had not been discovered or remedied owing to, the negligence of defendant, or his superintendent in that behalf.—*Seaboard Mfg. Co. v. Woodson,* 94 Ala. 143, 146, 10 South. 87; *Mary Lee C. & R. Co. v. Chambliss,* 97 Ala. 171, 11 South. 897. In this plaintiff has utterly failed, for we find nothing in the evidence that has any tendency to establish such negligence, even if it be conceded that there was a defect in the motor which rendered it unsuitable or unsafe for the use to which it was devoted.

It does not appear that the motor was originally defective, nor when, how, or under what circumstances the defect arose, nor that it was ever known, or made known, to defendant or its vice principal. It was a latent defect in the sense that it was discoverable only by practical and long-continued use by an operator. It is obvious that such preliminary or subsequent tests of efficiency are not required of the master, for they

are unusual, and entirely impracticable with respect to such machinery as this.—*L. & N. R. R. Co. v. Allen,* 78 Ala. 494; *L. & N. R. R. Co. v. Campbell,* 97 Ala. 147, 153, 12 South. 574; *Smoot v. M. & M. Ry. Co.,* 67 Ala. 13, 19, 20. Nor was there any fact or circumstance known to defendant or its superintendent which should have put it on notice that this motor was in any way defective.

The statute does not change the nature of the duty owed by masters to their servants in this regard. That duty was, and is, "to use ordinary care and diligence to furnish safe and suitable instrumentalities and appliances for the use of their employees in their business, and to keep the ways, works, machinery and plant free from defects which are dangerous, so as not to expose their employees to unnecessary perils—such care and diligence as men of ordinary prudence would exercise under like circumstances."—*Wilson v. L. & N. R. R. Co.,* 85 Ala. 269, 272, 4 South. 701; *Smoot v. M. & M. Ry. Co.,* 67 Ala. 13. On the facts shown there could arise no inference that defendant was guilty of the negligence charged.—*Mary Lee C. & R. Co. v. Chambliss,* 97 Ala. 171, 176, 11 South. 897.

2. The only testimony of any superintendence is plaintiff's testimony that Weise "was my boss, and in charge of that part of the business, and had charge of the machines." There is no evidence that it was any part of his duty to procure the machines originally, or to inspect them afterwards. And, as already pointed out, there is no evidence that he knew of any defect in this particular motor, or had any reason to suspect its presence, or that by any practicable inspection he would have discovered the defect if he had so suspected. Nor does it appear that he directed the mode of its use by plaintiff, or had any connection with the circumstances

of the accident. The second and third counts were therefore wholly unsupported by the evidence.—*Thomas v. Bellamy*, 126 Ala. 253, 257, 28 South. 707.

3. Under the fourth count the only evidence of the incompetence of plaintiff's helper, the negro, Charlie, was plaintiff's bare statement that he was not a competent person to help at the work he was then doing. No instances of his incompetency were specified, and on cross-examination plaintiff stated that he knew how to couple the hose to the air post and cut off the air at the post, and that he had always done those things properly. There is nothing in the evidence from which it can be inferred that defendant had any knowledge, or was in any way put upon notice, that this helper was not a fit person to be intrusted with the performance of the simple and menial services that plaintiff might call upon him to render, services which required no technical skill and but little intelligence, and were to be performed under the orders and immediately under the eye of plaintiff. Certainly but little watchfulness would be required of the master or its vice principal in the selection and supervision of such servants. It is true that plaintiff says that on the day of the accident he had twice spoken to Weise "about this negro Charlie, as to his fitness." But whether he spoke in terms of praise or of disparagement is not made to appear, and is in fact a matter of mere conjecture, so far as the record informs us.

The law on this subject was stated, per Anderson, J., in *First Nat. Bank v. Chandler*, 144 Ala. 308, 39 South. 828, 113 Am. St. Rep. 39, to be that in order to recover against the defendant the plaintiff "is bound to show by affimative testimony: (1) That the injury was the result of the act or omission of some fellow servant; (2) that said servant was incompetent for the duty he had

to perform; (3) that the fact of his incompetency was known to the defendant, or that it, or its manager or superintendent, acquired a knowledge of it during his employment and before the accident, or by due diligence could have learned of his incompetency." It was further said that: "Negligence such as unfits a person for service, or such as renders it negligent in a master to retain him in the employment, must be habitual, rather than occasional, or of such a character as to render it imprudent to retain him in service." And again, quoting from Bailey on Master's Liability, etc.: "It is proper, when repeated acts of carelessness and incompetency of a certain character are shown on the part of a servant, to leave it to the jury whether they did come to the knowledge [of the matser] if he had exercised ordinary care."

But in *Conrad v. Gray*, 109 Ala. 130, 19 South. 398, it is declared that a single act of negligence would prove neither incompetency nor notice to the master.

This helper had been in the employ of defendant for about a year, and had worked with plaintiff, off and on, for a month or more, and not a single act of incompetency is shown. So far as his original selection is concerned, the law presumes that defendant exercised due care therein.—*Conrad v. Gray, supra;* Bailey on Master's Liability, etc., 55. This presumption is here in no wise impeached. And, with respect to his retention in the service, there is nothing to show defendant's knowledge, or to charge it with notice, of his incompetency, or that due diligence would have discovered any incompetency. On such a showing, as matter of law, plaintiff was not entitled to recover on this count.— *Conrad v. Gray*, 109 Ala. 130, 135, 19 South. 398.

The foregoing views of the evidence lead to the conclusion that the general affirmative charge was properly given for defendant.

It remains to consider whether there was prejudicial error in any of the rulings on the evidence.

It is settled in this state that where a particular employment requires technical skill, an expert who is shown to have a general acquaintance with the employment, and who knows the particular services incident thereto, and has sufficiently observed a particular person in the course of such an employment, may testify that such person is competent or incompetent for such employment.—*Buckalew v. T. C. I. & R. R. Co.,* 112 Ala. 146, 159, 20 South. 606. The expert's opinion is allowed in such a case only because, and when, the jury cannot be assumed to understand the subject, and to be able to reach an intelligent conclusion of their own, without such expert assistance. This rule was applied, in the case cited, to the position of mine boss or superintendent. By way of contrast, it has been held that the president of an oilmill could not testify whether or not his managing employee "was a good man to manage hands." The court said: "This inquiry went to the plaintiff's competency as a superintendent of the business in which he was employed, and involved a mere expert opinion of his qualifications. The capacity to manage hands is not such a question of science or skill as that jurors would be incompetent to form a correct judgment upon it without enlightenment by expert testimony. The facts showing incapacity in this particular should have been stated, so that the jury might themselves decide the question."—*Troy Fertilizer Co. v. Logan,* 90 Ala. 325, 8 South. 46. These observations apply to and control the present case with respect to the competency of plaintiff's negro helper, and the opinion of the witness Hopp as to his competency was properly excluded.

This witness Hopp, testifying for plaintiff, stated that he went to work the next morning on the job left by plaintiff after his injury, and that he found there a motor drill like the one used by plaintiff, and that it was defective. On cross-examination he stated that he had no personal knowledge that this machine was at the place where plaintiff was working, nor that it was the same machine used by plaintiff the day before. It appeared, also, from plaintiff's testimony that there were a number of these motors in use in defendant's shops, and that there were from five to ten engines in the back shop, where plaintiff worked, being worked on by other workmen. Under this evidence we think the trial court did not err in excluding the testimony of Hopp as to the defective condition of the motor which he found ready for his own use in this back shop the next morning after the accident. Whether it was the same motor or not the jury could only have guessed.

Plaintiff asked this witness these questions: "How did you identify the place as being the place where Mr. Owen is supposed to have been hurt?" and, "How did you find out that that was the place where he was hurt?" No statement was made as to what was expected to be shown by the answers, and, as they might as well have been answered by illegal as by legal evidence, the court cannot be put in error for excluding the questions.—*B. R., L. & P. Co. v. Barrett,* 179 Ala. 274, 60 South. 262.

What the boss told Hopp, after the injury to plaintiff, as to where plaintiff was working was mere hearsay, and not admissible against defendant to prove that fact.

Plaintiff, testifying as a witness for himself, was asked by his attorney if his boss did not know that those sockets had burrs on them, and if during the 30 or 60

days he had been working, there had been burrs on them. These questions were not confined to the socket used by plaintiff at the time he was injured, and were for that reason properly disallowed.

Plaintiff was also asked by his attorney, with respect to his negro helper, "What was his duty about cutting off air when you told him?" This question was disallowed on defendant's objection, on the ground that the helper was a fellow servant, and any failure in his duty was immaterial. There had been no testimony, at that stage of the trial, that this helper was an incompetent servant, and prima facie any inquiry as to this particular duty was inadmissible, as not bearing upon that general inquiry. Moreover, the witness stated at other times that his helper was not allowed to cut off the air at the motor, and that he regularly cut it off at the post, which substantially answered this question.

We have discussed these several rulings upon their individual merits. It is to be observed, however, that had the ruling in each case been favorable to plaintiff, the presence of all of this rejected testimony would have had no tendency whatever to supply or cure the fatal deficiencies of proof as to a material and essential element of plaintiff's case under each count of the complaint, which we have undertaken to show above.

The judgment will be affirmed.

Affirmed.

DOWDELL, C. J., and MCCLELLAN and SAYRE, JJ., concur.