[W. R. Flowers Lumber Co. v. Hutchins.]

# W. R. Flowers Lumber Co. *v.* Hutchins.

### *Injury to Servant.*

(Decided June 30, 1914.  66 South. 108.)

1. *Master and Servant; Injury to Servant; Notice of Defect.*—Under subdivision 1, section 3910, Code 1907, a master is not liable for injuries to an experienced engineer from the unexpected starting of a stationary engine caused by a leak in a valve in the interior of the engine, where the existence of a defect was not previously known to the master, and there was nothing to charge him with knowledge thereof, although the master had had notice of other defects, and had instructed an expert engineer to remedy same.

2. *Same.*—A request by an engineer to his employer to have a stationary engine overhauled for defects discoverable while the engine was not in use, was not notice of a latent defect discoverable only when the engine was running, within the provisions of subdivision 1, section 3910, Code 1907, so as to render the employer liable for subsequent injuries to the engineer from such defects which were first discovered at the time of the accident, and while the engine was running.

3. *Same; Defective Machinery; Burden of Proof.*—Where the action was under subdivision 1, section 3910, Code 1907, the burden was on plaintiff to prove the existence of the defect, and that it arose from or was not discovered or remedied owing to the negligence of defendant or someone in his employ; and that such defect was the cause of the injury.

4. *Same.*—Where the action was by an engineer for injuries from the sudden starting of a stationary engine due to a leak in the valve on the interior of the engine, the burden was on plaintiff to show that there was something in the manner in which the engine stopped just prior to the accident which showed a defect in the valve which a reasonable inspection could have detected.

(Anderson, C. J., McClellan and Gardner, JJ., dissent.)

APPEAL from Houston Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by J. S. Hutchins against the W. R. Flowers Lumber Company for damages for injuries alleged to have been inflicted while in its employ. Judgment for plaintiff and defendant appeals. Reversed and remanded.

W. L. LEE and W. R. CHAPMAN, for appellant. Count 5 was subject to the demurrers interposed.—*Conrad v. Gray,* 109 Ala. 130; *Seaboard Mfg. Co. v. Woodson,* 98 Ala. 378; *Laughran v. Brewer,* 113 Ala. 509; *C. & W. Ry. Co. v. Bradford,* 86 Ala. 574; *Tallassee Falls v. Moore,* 158 Ala. 356. The affirmative charge requested by appellant should have been given.—*Going v. Ala. S. & W. Co.,* 142 Ala. 537; *L. & N. v. Campbell,* 97 Ala. 147; *L. & N. v. Davis,* 91 Ala. 487; *M. & C. R. R. Co. v. Askkew,* 90 Ala. 5. The burden was on plaintiff to show the existence of the defect, that the master was negligent in not discovering it or remedying it, and that the defect caused the injury.—*L. & N. v. Lowe,* 158 Ala. 393; *N. A. Ry. Co. v. Mansell,* 138 Ala. 562.

ESPY & FARMER, for appellee. Count 5 as amended was unquestionably good, as tested by the former decisions of this court.—*Jackson L. Co. v. Cunningham,* 141 Ala. 206; *St. L. & S. F. Ry. Co. v. Sutton,* 169 Ala. 400; *Pell City M. Co. v. Cosper,* 172 Ala. 536; *West P. C. Co. v. Andrews,* 150 Ala. 374; *So. Ry. v. Davis,* 119 Ala. 573; *Harbison-W. R. Co. v. Ross,* 62 South. 1010; *Shereda v. Warrior-P. Co.,* 62 South. 721; *Yolande C. Co. v. Norwood,* 58 South. 118. The only purpose for which the court may look to the bill of exceptions is to review the action of the trial judge in overruling appellant's motion for a new trial.—*Yolande C. Co. v. Norwood, supra; McLoud v. Flournoy,* 57 South. 630; *Cassells Mills, et al. v. Strater Co.,* 166 Ala. 281.

DE GRAFFENRIED, J.—The plaintiff, J. S. Hutchins, who is an engineer of 25 years' experience, was injured while at work upon a stationary engine of the Flowers Lumber Company, and sues to recover the damages which he suffered by reason of said injuries. The

[W. R. Flowers Lumber Co. v. Hutchins.]

action was brought under subdivision 1 of the Employers' Liability Act.

Our statute provides that the master or employer is not liable under said subdivision 1, unless the defect therein mentioned arose from, or had not been discovered or remedied owing to, the negligence of the master or employer, or of some person in the service of the master or employer and intrusted by him with the duty of seeing that the ways, works, machinery, or plant were in proper condition.—Civil Code 1907, p. 602.

The plaintiff claims that his injury was due to a defect in a valve of the engine. It seems that it was the duty of the plaintiff—and this duty, we gather from his evidence, he had been in the performance of for some time before his injury—to start and stop this engine, and, generally, to superintend it. On that subject we quote the following part of the plaintiff's testimony. as shown by the bill of exceptions: " 'On that day I was employed by them, and working for them, as planing mill foreman, and as engineer, and it was my duty to look after the planers and the engines. It was my duty to start and stop the engine and do the necessary work on it, tighten bolts and brasses about the engines, and to screw nuts and tighten up any looseness where it was outside work on the engine. It was not my duty to have anything to do with the work on the inside of the engines if anything got wrong in them. I was engaged at my duties at the plant of the defendant on the 11th of January, 1912. The engine was a stationary engine.' The plaintiff then asked the witness the following question: 'Did it require the time and attention of a man all of the time to run the engine, or did you just start and stop the engine when you were there?' The defendant objected to the question, and for grounds thereof assigned the following: 'Because it was irrelevant,

immaterial, and illegal.' The court overruled the defendant's objection, and the defendant then and there duly excepted to the ruling of the court. In answer to said question the witness said as follows: 'It did not require all the engineer's time.' The defendant then and there moved to exclude the answer to said question because the same was irrelevant and immaterial and illegal, and because said answer was not responsive to the question and the court overruled the defendant's motion to exclude said answer, and the defendant then and there duly excepted to the ruling of the court. The witness further testified that it was his duty to start and stop the engine, and it was his duty to look after the planers and see that the lumber was properly run through the planers."

The plaintiff further testified that on January 11, 1912, while in the performance of his duties about the engine, he noticed some brasses on the engine which needed tightening; that he stopped the engine, began to tighten the brasses, and while doing that work the engine suddenly started and caught his hand and arm, inflicting painful and permanent injuries upon them. The witness further testified that the injuries were due to a leak in the valve of the engine, but his testimony plainly shows, we think, that at no time before this had he ever noticed any defect in the valve, and that at no previous time had this engine indicated, in any way, that there was a leak in the valve. At any rate, he testified fully in the case, and there was no claim by him that he at any time had noticed anything about this engine which indicated to him that it possessed a valve which was defective in any way. The valve is shown by the evidence to have been hidden from view—it was on the interior of the engine—and such defects are latent defects, discoverable only while an engine is in actual

operation.—*Owen v. A. G. S. R. R. Co.*, 181 Ala. 552, 61 South. 924.

2. The only way in which the plaintiff undertook to show that the defendant had knowledge of *any* defect— *not the claimed defect in question*—in the engine was by the following, which we copy from his testimony:

"I had a conversation with Mr. Flowers about the engine about the 23d of December, before I was hurt. I think it was the day before Christmas Eve. We were speaking about shutting down for Christmas holidays, and I went in the office and told Mr. Flowers that the engine was in bad shape and it needed some work done on it. Mr. Lane was sitting in Mr. Flowers' office at the time, and Mr. Flowers turned to him and said: 'Mr. Lane, there is a job for you; get it done while we are shut down.' "

The witness further testified that Lane was, at the time of the above conversation, and of the injury, the head machinist, and all the evidence shows that Lane was a practical, expert engineer.

3. We direct attention to the fact that at the time of the above conversation and at the time of the injury the plaintiff, a skilled engineer, whose duties kept him in proximity to the engine while it was in operation, and who had to start and stop the engine, had not, at any time, himself discovered *any* defect in the *valve*. He not only reported none to Flowers, the general manager of the defendant, but he himself knew none to report. The claimed defect, as we have already said, belonged to that class of defects which are known as latent defects, and had not been discovered by the plaintiff, who had charge of the engine and who was a practical engineer of many years' experience.—*Owen v. A. G. S. R. R. Co., supra.*

4. The evidence in this case shows without dispute that during the Christmas holidays Lane overhauled the engine. The engine was then run, and gave no indication that there was anything wrong with the valve. The evidence further shows without dispute that since the plaintiff received his injuries the engine has been constantly in use, and that at no time has it since that time indicated in the slightest that there is anything wrong with the valve. This is, then, the case of a stationary engine which, for at least a considerable period of time before the plaintiff's injuries, had been, at the exact spot where the plaintiff received his injuries, in constant operation; the operation being conducted by the plaintiff himself. That was the business of the plaintiff, and nothing had ever occurred, while that engine was thus in constant operation, to indicate to the plaintiff or any other person that there was any defect whatever in the valve. That engine was, while the mill was shut down for Christmas week, overhauled by a competent man, who, as an expert engineer, was capable of discovering and of remedying defects in engines. During this overhauling—and the engine was placed in operation—no defect in the valve was discovered and the engine gave no evidence of such a defect. From the time work at the mill was resumed until the moment of the plaintiff's injuries the engine was at work performing its usual functions, and gave no evidence to the plaintiff or to any other person of any defect in the valve. Since the plaintiff's injuries the engine has been in constant operation, has never been moved from the exact spot of its location at the time of the plaintiff's injuries, and that engine has never, at any time, given any indication to any person that there is anything wrong with the valve. In other words, the plaintiff's injuries came to him—if his testimony is true—by an

act of the engine which, from the entire *previous* and *subsequent* history of the engine, no one had a right to anticipate, provide against, or expect. It came like a bolt of lightning from a sky which had previously, and has subsequently, appeared to all observers to be a clear sky. While the plaintiff testified—and he is an expert engineer—that, in his opinion, the starting of the engine was due to a defect in the valve all the *facts* show that, if the engine did, in fact, start to running as the plaintiff claims, then that occurrence is one which reasonable human foresight could not have anticipated.

In the case of *Tuck, Adm'r v. Louisville & Nashville Railroad Co.*, 98 Ala. 150, 12 South. 168, this court, through Head, J., said: "It is well settled by our decisions that *proof* of each and all of the following propositions is essential to the right of recovery under this count of the complaint: First, the existence of a defect in the ways, works, machinery, or plant connected with, or used in, the business of defendant; second, that such defect arose from, or was not discovered or remedied owing to, the negligence of defendant, or of an employee charged with the duty of seeing that they were in proper condition; and, third, that such defect was the proximate cause of the injury."

The count which was then under consideration was framed under subdivision 1 of the Employers' Liability Act, the identical subdivision under which the complaint in the present case was framed, and in that case Justice Head called attention to the uniform construction which has been placed upon this subdivision, viz.: "In a case like the present there is no presumption of negligence, and when there is no evidence having tendency to show it no recovery can be had."—*L. & N. R.*

*R. Co. v. Davis,* 91 Ala. 487, 8 South. 552; *C. & W. R. R. Co. v. Bradford,* 86 Ala. 574, 6 South. 90.

We advert to the rule declared in the above cases—and they have been uniformly followed—for the purpose of indicating that in the present case we are not dealing with that class of cases in which the *law,* upon evidence of certain facts, raises a rebuttable presumption of defects in machinery or its appliances or of negligence on the part of the defendant or of some of its employees, the onus of rebutting which is, by the law, cast upon the defendant.—*L. & N. R. R. Co. v. Marbury Lumber Co.,* 125 Ala. 237, 28 South. 438, 50 L. R. A. 620; *McCary v. Alabama Great Southern R. Co.,* 182 Ala. 597, 62 South. 18. In this case the onus of proving that there *was* a defect in the engine, and, if there was a defect, *then* that it arose from or had not been discovered or remedied owing to, the negligence of the defendant or of some employee of the defendant charged in that behalf, was upon the plaintiff. As this engine had been constantly in use by this defendant, and as the plaintiff's own testimony shows that at no time prior to his injury had anything occurred to indicate that there was a defect in the valve, and as all the evidence shows that since the injury the engine, although in constant use, has never in any way given the slightest evidence that there is, in fact, any defect in 'the valve, we are of the opinion that the plaintiff failed to submit to the jury any evidence from which they had the legal right of inference that there has ever been a' defect in the valve which a reasonable inspection can detect.

It is urged that there is no evidence tending to show that the engine prior to or since the plaintiff's injuries was ever stopped under the same conditions as existed at the time of the plaintiff's injuries. All this may be

true, but this in no way helps the cause of the plaintiff. This court judicially knows nothing about the valves to engines, and the onus was on the plaintiff to show that there was something in the manner in which the engine was stopped on the occasion named which placed a *test* upon the condition of the valve which its previous operations had not placed upon it, and that a defect in the valve, which a reasonable inspection could have detected, was thereby discovered. In other words, it was the duty of the plaintiff to make out his case, and the absence of evidence on this subject cannot save the plaintiff. Speaking on a subject somewhat similar to the one now in hand, STONE, C. J., speaking for this court, said: "It cannot be supposed that the court is familiar with the mechanical contrivance known as a brake on a railroad car, nor when or how it is liable to become out of repair. Nor can we be presumed to know what causes it to 'stick' or refuse to let loose the pressure which retards the free revolution of the wheels, and, of consequence, the movement of the train. These are not matters either of judicial or of common knowledge. If we were permitted to indulge in conjecture, we would probably find ourselves at a loss to determine whether the brake 'stuck,' or refused to let loose, in consequence of its being too tightly put on, or from some other cause. This was necessarily a question for the jury, if there was evidence bearing upon it. It must be borne in mind that the burden was on the plaintiff to satisfy the jury by proof that there was a defect in the machinery; that the defect existed when the car left Mobile; that it was known to the railroad's employees whose duty it was to look after it, or would have been discovered if the inspector had employed proper diligence; and that that defect caused the plaintiff to fall from the car and to receive the injury he complains of. For, if the defect

is not proven to have existed, * * * or if it was not discoverable upon careful inspection, or if in fact there was no defect, the plaintiff failed to make out his case."—*L. & N. R. R. Co. v. Binion,* 98 Ala. 570, 14 South. 619.

If there are reasonable tests other than those occurring in its ordinary use to which an engine of the class to which this engine belongs may be subjected in order that a valve in such an engine may be tested as to defects, the evidence in this case wholly fails to show it. The plaintiff is an engineer of many years' experience, and, if such tests exist, he should have told the jury about them. The burden was on him, and if he had done so the jury would have had some tangible evidence upon which to base a verdict. The ordinary man knows less about the valve of an engine—a thing hidden from view —and the functions which it performs than he does about the brakes on a train which are open to ordinary observation and the uses of which are well known.

There is nothing in the case of *Caldwell Watson Foundry & Machine Co. v. Watson,* 183 Ala. 326, 62 South. 859, militating against the above views. In that case this court was dealing with a structural defect. In this case we are dealing with a claimed defect which, it is claimed, arose through long-continued use. The theory of the plaintiff is that, as there was evidence before the jury—the testimony of the plaintiff—that the engine started suddenly, and that as he testified that the sudden starting was due to a *defect* in the *valve,* and as he had notified the defendant that "the engine was in bad shape and needed some work done on it," he made out a case for the consideration of the jury. The trouble with the plaintiff's case is that he himself shows by his testimony that if there is a defect in the valve such defect is not one which ordinary inspection can

detect.  He is in the same position as a person would be who testifies that he saw a flash of lightning, and who at the same time rebuts the presumption of clouds by swearing that he was observing the sky and that there were no clouds visible.

5.  In addition to the above, the evidence shows without dispute that, when the plaintiff told the defendant's president and general manager that the "engine was in bad shape and needed some work done on it," the engineer, Lane, was present, and that the president and general manager said to Lane, "Mr. Lane, there is a job for you; get it done while we are shut down," during the Christmas holidays.  According to the plaintiff's own testimony, therefore, at the moment that he informed the defendant of the fact that the engine was in "bad shape," a competent engineer was employed and directed to overhaul the engine and put it in good shape while the mill was idle during the holidays.  The undisputed evidence shows that Lane did overhaul the engine, and that he made repairs upon it.  It also shows that he knew of no defect in the valve, and that he knew of no reason to suspect that there was trouble in the valve.  Lane told, while on the witness stand, what he did to the engine and what he did not do to it.  The only fact that the plaintiff can base a claim upon that this defect was due to the negligence of Lane, is the fact that, if his testimony on that subject is true, the engine suddenly started on the occasion of his injury, and that he testified that, in his opinion, the sudden starting was due to a defect in the valve—a defect which it had not previously, and has not subsequently, shown.  The witness was present as a party to this cause when Lane testified.  As Lane told *what* he did, the plaintiff, an expert engineer, had the opportunity of showing by his own testimony, if he could do so, that Lane, in doing

the work which, at the plaintiff's suggestion, he was employed by the defendant to do, was negligent in that he omitted to do something which he should have done or had done something that he should not have done or which he should have done in a different or better way. The burden was on the plaintiff to show negligence, and he undertook in no way to show that Lane did not, in fact, perform the duty which he was employed to perform in a proper and workmanlike manner. But, says the plaintiff, the evidence shows that I told the defendant that the engine was in bad shape and needed repair, and, while I did this, nevertheless, shortly after the holidays, the engine suddenly started, which I, an expert engineer, say would not have occurred but for a defective valve. This, says the plaintiff, shows that Lane did not properly do his work, and renders *this* disputed point a question for the jury. Our reply to this proposition is that the plaintiff has *failed to show, by any testimony,* that there has ever been, in the history of this engine, either before or after the accident, anything indicating that there is anything wrong with the valve of the engine which a reasonable examination and inspection could detect; or that, if anything is wrong with it, then that the *claimed* defect could have been discovered by even extraordinary tests.

"The burden of proof in this case is on the plaintiff; * * * and this is not shifted by proving only the fact of injury from the explosion of the boiler."—*L. & N. R. R. Co. v. Allen,* 78 Ala. 494.

Conceding for the sake of the argument of the plaintiff that there is some peculiar defect in this valve, the plaintiff failed to show that this defect arose from, or was not discovered or remedied owing to, the negligence of defendant or of an employee of defendant charged with the duty of seeing that they were in proper condi-

tion.  If there were practical and usual tests such as are used by persons of ordinary prudence engaged in business similar to that of the defendant, by which this peculiar defect complained of could have been discovered, the plaintiff, an expert engineer, knew of them, and should have offered evidence tending to show such tests. This he failed to do, and an employer is not liable to an employee under section 1 of the Employers' Liability Act for injuries received by him unless the evidence shows negligence on the part of such employer or of an employee charged with the performance of certain duties.  We fail to find any evidence tending to show negligence, and for that reason the defendant was entitled to affirmative instructions in its behalf.  Indeed, the facts of this case are less .favorable to the plaintiff's right of recovery than were the facts in the cases of *L. & N. R. R. Co. v. Binion, supra; Tuck v. L. & N. R. R. Co., supra; L. & N. R. R. Co. v. Allen, supra;* and *L. & N. R. R. Co. v. Campbell,* 97 Ala. 147, 12 South. 574.

In *L. & N. R. R. Co. v. Campbell, supra,* and *L. & N. R. R. Co. v. Allen, supra,* this court announced the proposition, without qualification that, "in the *absence of evidence* that an inspection would have disclosed the defect which caused the injury, the mere failure to inspect will not warrant holding the master liable"; and in each of those cases affirmative instructions were given on behalf of the defendant.

The overhauling which the plaintiff indicated to Flowers should be made of this engine was an overhauling for defects discoverable, not while the engine was in use, but while it was not in use; i. e., while it was shut down for the Christmas holiday.  This conversation with Flowers was not in any way calculated to place him or Lane upon notice as to any defect in the valve, a defect discoverable only while the engine was

running, and the evidence fails to show that from any previous behavior of the engine—although it had been long in use—any indication had been given to the plaintiff, to Flowers, or to Lane, or to any other person, that there was any reason to even suppose that there was a defect in the valve of the engine.

If the plaintiff's injuries are traceable to a defect in the valve of this engine—if the engine, in fact, started suddenly, as he states it did—then the defect is not, as we have already said, by *any evidence* shown to have been such a one as any reasonable inspection could have detected. The Legislature, not the courts, has declared that, for a servant to recover against the master in a case like this, the *burden* of proving, "not only the existence of the alleged defect in the condition of the ways, works, machinery, or plant connected with or used in the business of the master or employer and that the defect was the proximate cause of the injury alleged, but also that the 'defect arose from, or had not been discovered or remedied owing to, the negligence of the master or employer, or of some person in the service of the employer or master,' " is on the plaintiff.—*Louisville & Nashville R. R. Co. v. Lowe,* 158 Ala. 391, 48 South. 99, and authorities there collated.

It follows from what we have above said that the trial court, in our opinion, committed reversible error in overruled the defendant's motion for a new trial. The judgment of the trial court is therefore reversed, and the cause is remanded to the trial court for further proceedings in accordance with the above opinion.

Reversed and remanded.

MAYFIELD, SAYRE, and SOMERVILLE, JJ., concur. ANDERSON, C. J., and McCLELLAN and GARDNER, JJ., dissent.