107 So.2d 573

Thurman **HALLMAN**

v.

**STATE.**

5 Div. 534.

Court of Appeals of Alabama.

Dec. 9, 1958.

Glenn & Glenn, Opelika, for appellant.

John Patterson, Atty. Gen., and John F. Proctor, Asst. Atty. Gen., for the State.

HARWOOD, Presiding Judge.

This appellant's jury trial resulted in a verdict finding him guilty of the larceny of a Chevrolet automobile of the value of $300, the personal property of Joe Barsh.

The evidence presented by the State tends to show that on the night of 3 February 1957, Highway Patrolman, H. M. Brock, had separately arrested the appellant and another man for driving while intoxicated.

As he was proceeding into Opelika with his two prisoners in his patrol car he saw yet another car weaving down the road in his direction. Turning around he stopped this car near the Pear Tree Inn. In it was Joe Barsh, his wife Bobby Jean, and Bobby Jean's young sister, a girl about 9 or 10 years of age. Bobby Jean could not drive a car.

He placed Barsh under arrest, telling Bobby Jean to wait in the Barsh car until he could send someone back to drive the Barsh car in.

When Mr. Brock returned to the patrol car he found that the defendant had fled. His search of the surrounding area for the defendant was fruitless. Brock then left with his two remaining prisoners for Opelika.

Joe Barsh testified that he had never seen the defendant until the night in question, and had never given the defendant permission to use his car.

Bobby Jean Barsh testified that after Patrolman Brock had left, the defendant came to the Barsh car in which she and her sister were sitting, and over her protestations entered the car and took possession of it.

He drove the car off at a rapid speed. Once on their drive the defendant stopped on a side road and made insistent advances on Bobby Jean. When he was unsuccessful he threatened to leave Bobby Jean and her sister in the woods. Later he stopped at a house, which other evidence shows to have been the home of defendant's brother.

Leaving this house the defendant said he would take Bobby Jean and her sister to Opelika. However he stopped at a road stand near Kellyton, and was here arrested by officers of the Highway Patrol.

Bobby Jean testified that she continually begged defendant not to take the car. She further testified that at no time during the entire night had she had anything to drink.

In his own behalf the defendant-appellant testified that when he returned to the Barsh car, after Brock's departure, Bobby Jean was standing by the side of the car. She gave him the keys and asked him to drive her out beyond Wadley in order to get someone to sign her husband's bond.

Bobby Jean had been drinking, and on the drive he stopped by his brother's house and got a glass of water, returned to the car and

he and Bobby Jean drank some whiskey which Bobby had with her.

The appellant denied he had at any time molested Bobby Jean on the drive.

Appellant's brother, at whose house the stop was made, gave testimony tending to corroborate the appellant, as to the occurrence at his house.

In rebuttal Bobby Jean denied she had had any whiskey that night, or that she had had a drink at the brother's house.

Patrolman A. J. Knox also testified in rebuttal that after the defendant's arrest at Kellyton, Bobby Jean and her sister rode on the front seat with him, Bobby Jean being in the middle; that she did not appear to have been drinking, and he smelled no alcohol on her breath.

In the presentation of the State's evidence in the trial below, Officer Brock was the first witness offered by the State. He testified as to defendant's original arrest, and flight from the patrol car, etc.

The State's second witness was Joe Barsh. During the cross examination of Barsh the court sustained the State's objection to the following question, the record showing the following:

"Q. Wasn't your wife drinking with you that night?

"Mr. Young: We object. Incompetent, irrelevant, and immaterial.

"Mr. Glenn: We think it is very competent. We except."

At the time the evidence was sought by the question Bobby Jean Barsh had not testified, nor could the court know that she would be used as a witness. The relevancy of the evidence sought to the issues at the time was entirely submerged and conjectural. There was no statement by counsel that it was expected to connect the sought evidence with later evidence so as to render it relevant.

■ The evidence sought being irrelevant at the time it was sought, no error resulted in sustaining the objection to the question seeking to elicit it. See, Taylor v. Taylor, 251 Ala. 374, 37 So.2d 645; Eggleston v. Wilson, 208 Ala. 167, 94 So. 108; Owen v. Alabama Great Southern R. Co., 181 Ala. 552, 61 So. 924.

Counsel for appellant further contends that this judgment should be reversed because of the denial of the appellant's motion for a new trial.

In his instructions to the jury the court stated that "larceny is the felonious taking and carrying away of another man's goods, without the consent of the owner and with the intent to deprive the owner permanently thereof." The court further instructed the jury in detail as to the felonious intent required in order to make a taking of another's goods larceny.

The instructions were a clear and detailed exposition of the crime of larceny.

As we see it, the facts sufficiently justified the jury's determination that the required felonious intent existed. This was a question of fact largely within their province.

■ The other required elements of larceny were present, if the State's evidence be believed to the extent required rule, i. e. beyond a reasonable doubt. That the appellant's evidence contradicted that presented by the State merely presented a question of fact solely within the province of the jury to resolve.

We find no basis that would justify us in holding that the trial court erred in denying the appellant's motion for a new trial.

Affirmed.